**Tierney A. O'ROURKE, Public Administrator of Queens County, New York, as Administrator of the Estate of Alexandros Hadzis, deceased, Plaintiff,**

v.

**EASTERN AIR LINES, INC., and United States of America, Defendants.**

**No. 76–CV–1025.**

United States District Court,
E.D. New York.

Dec. 14, 1982.

---

Kreindler & Kreindler by Milton G. Sincoff, Steven R. Pounian, New York City, for plaintiff.

Haight, Gardner, Poor & Havens by Walter E. Rutherford, Alan D. Reitzfeld, New York City, for defendants.

## DECISION AND ORDER

BRAMWELL, District Judge.

### INTRODUCTION

On June 24, 1975, Eastern Airlines's ill-fated flight 66 crashed on its final approach to New York's John F. Kennedy International Airport. An action was thereafter commenced in June 1976 in this Court by the Public Administrator of Queens County against Eastern Airlines and the United States of America to recover damages for the wrongful death of Alexandros Hadzis, a passenger on the plane.

On January 29, 1982, this Court granted Eastern's motion for partial summary judgment, holding that Eastern could invoke the damage limitations of the Warsaw Convention and Montreal Agreement. *O'Rourke v. Eastern Airlines,* 16 Avi.L.Rep. 18,367 (E.D. N.Y. Jan. 29, 1982). Subsequently, on March 1, 1982, Eastern deposited $75,000 with the Clerk of this Court. Plaintiff now seeks an order directing defendant Eastern Airlines, Inc. to pay the plaintiff prejudgment interest of $31,604.79 in addition to the $75,000. Thus, the issue to be decided is whether the Warsaw/Montreal $75,000 limit on liability is an absolute ceiling on an airline's liability or whether interest can be added to that amount.[1] This is a question which has apparently not yet formed the basis of a published opinion in this circuit.

---

1. Although interest has traditionally been treated separately from the issue of damages, at least one court has recognized that a plaintiff's claim for prejudgment interest can be considered part of his damage claim. *See Domangue v. Eastern Airlines, Inc.,* 542 F.Supp. 643, 653 (E.D.La.1982).

## WARSAW CONVENTION/MONTREAL AGREEMENT

█ The Warsaw Convention[2], as modified by the Montreal Agreement[3], is an international treaty signed by, among others, the United States. As such, it, like the United States Constitution, represents the supreme law of the land. *See, e.g., Reed v. Wiser,* 555 F.2d 1079, 1093 & n. 19 (2d Cir.), *cert. denied,* 434 U.S. 922, 98 S.Ct. 399, 54 L.Ed.2d 279 (1977); *Smith v. Canadian Pacific Airways, Ltd.,* 452 F.2d 798, 801 (2d Cir.1971). Accordingly, the determination of whether or not prejudgment interest is recoverable over and above the $75,000 damage limitation must be determined solely with respect to the Warsaw Convention/Montreal Agreement. All local law to the contrary, including any arguably applicable provision of the New York Estates Powers & Trusts Law must therefore be preempted.[4] *See Causey v. Pan American World Airways, Inc.,* 684 F.2d 1301 (9th Cir.1982).

The Montreal Agreement specifies that the limit of an airline's liability for each international passenger for bodily injury or death, shall be the sum of $75,000. "... inclusive of legal fees and costs." 31 Fed. Reg. 7302 (1966).[5] The Agreement, however, does not specifically address itself to the question of prejudgment interest. Accordingly a more in depth look at the treaty is warranted.

█ In analyzing a treaty a court is bound to look, in the first instance, to the face of the treaty itself and to "give the specific words of a treaty a meaning consistent with the genuine shared expectations of the contracting parties." *Maximov v. United States,* 299 F.2d 565, 568 (2d Cir.1962), *aff'd,* 373 U.S. 49, 83 S.Ct. 1054, 10 L.Ed.2d 184 (1963). *See also Board of County Com'rs v. Aerolineas Peruanasa,* 307 F.2d 802, 806–07 (5th Cir.1962).

█ The Montreal Agreement provides in pertinent part that

"The limit of liability for each passenger for death, wounding or other bodily injury should be the sum of U.S. $75,000 *inclusive of legal fees and costs.*"

31 Fed.Reg. 7302 (1966) (Emphasis the court's)

Plaintiff argues that because the emphasized language does not specifically provide for prejudgment interest the limitation necessarily excludes such sums. The court, however, cannot agree. The courts which have addressed this argument as well as analogous arguments leveled at the wording of other portions of the Warsaw/Montreal Treaty have uniformly rejected them.

For example, in *Domangue v. Eastern Airlines,* 542 F.Supp. 643 (E.D.La.1982) the court held that the treaty's silence on the issue of prejudgment interest could not be construed as an intention that such interest not be included in the $75,000 limitation. In *Block v. Compagnie Nationale Air France,* 386 F.2d 323 (5th Cir.1967), *cert. denied,* 392 U.S. 905, 88 S.Ct. 2053, 20 L.Ed.2d 1363 (1968) the Fifth Circuit held that the absence of an express provision governing charter flights could not be inter-

---

**2.** Convention for the Unification of Certain Rules Relating to International Transportation by Air, concluded at Warsaw, Poland, October 12, 1929, adhered to by the United States June 27, 1934, 49 Stat. 3000, 3014, *reprinted in* 49 U.S.C. following § 1502.

**3.** Agreement Relating to Liability Limitations of the Warsaw Convention and the Hague Protocol, Agreement CAB 18900, approved by CAB Order No. E–28680, May 13, 1966, 31 Fed.Reg. 7302 (1966). *For a discussion of the history of the Warsaw Convention and Montreal Agreement limiting international air carriers' liability see this court's decision in Winbourne v. Eastern Air Lines, Inc.,* 479 F.Supp. 1130 (E.D.N.Y.1979), *rev'd on other grounds, Winb-*

*ourne v. Eastern Air Lines, Inc.,* 632 F.2d 219 (2d Cir.1980).

**4.** Plaintiff relies on section 5–4.3 of the New York Estates, Power and Trusts Law providing for interest from the date of death.

**5.** In the Montreal agreement, adopted in 1966, the signatory airlines, including Eastern, agreed to enlarge their maximum liability to $75,000 per passenger and to make liability for injuries described by Article 17 of the Convention absolute. The limit had theretofore been the sum of approximately $8,300, established by the Warsaw Convention.

preted as excepting their coverage under Warsaw/Montreal. Finally, in *Reed v. Wiser supra,* the Second Circuit rejected the contention that an air carrier's employees be subjected to liability in excess of $75,000 because the treaty did not specifically address employees. 555 F.2d at 1089. Thus it is clear that the wording of the treaty, standing alone, furnishes no basis for the award of prejudgment interest. A look at the history of the Warsaw Convention makes it clear that one of the intentions of the parties drafting the treaty was to establish a limitation on liability designed to protect the fledgling aviation industry from the alternatives of ruinous damage suits or exorbitant insurance premiums. *See Reed v. Wiser,* 555 F.2d at 1089. As Secretary of State Cordell Hull wrote in transmitting the Convention to the United States Senate for ratification in 1934:

> "It is believed that the principle of limitation of liability will not only be beneficial to passengers and shippers as affording a more definite basis of recovery and tending to lessen litigation, but that it will prove to be an aid in the development of international air transportation, as such limitation will afford the carrier a more definite basis on which to obtain insurance rates, with the probable result that there would eventually be a reduction of operating expenses for the carrier and advantages to travelers and shippers in the way of reduced transportation charges."

*Senate Comm. on Foreign Relations, Message from the President of the United States Transmitting a Convention for the Unification of Certain Rules. Sen.Exec. Doc. No. G, 73rd Cong.2d Sess. 3–4 (1934).*

The adoption of the Montreal Agreement in 1966, revising the damage limitation upward to $75,000, is a telling indication of the continued desire to fix a definite limit on an airline's liability. The Agreement was adopted due to an evergrowing amount of United States' criticism that the Warsaw limitation of liability was unrealistically low.[6] This criticism culminated in the State Department's filing of a formal notice of denunciation of the Warsaw treaty on November 15, 1965, to take effect 6 months later. Faced with losing the United States' membership, the international air carriers convened in Montreal in the Spring of 1966 to raise the international damage limitation which theretofore had been $8,300. After months of negotiation the signatory airlines, on May 13, 1966, concluded what has come to be known as the Montreal Agreement. The Agreement raised the liability ceiling to $75,000, as suggested by the United States, as well as making liability absolute by preventing the airlines from raising the defense of due care. CAB Order No. E–28680, May 13, 1966, 31 Fed.Reg. 7302. Significantly, the waiver of this key defense was given as *quid pro quo* for the guarantee that the absolute limit of the airlines' liability would be $75,000. *Id. See also Day v. Trans World Airlines,* 528 F.2d 31, 36 (2d Cir.1975), *cert. denied,* 429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976). It is against this background that plaintiff now asks this court to set aside this ceiling and award the plaintiffs interest which would raise Eastern Air Lines total liability here to $106,604.79.

The plaintiff contends that prior case law indicates that the $75,000 ceiling was not meant to include prejudgment interest. However, the court finds that the cases relied on by plaintiff are, for various reasons, unpersuasive. In *Leppo v. Trans World Airlines,* Docket No. 21770–1973 (Sup.Ct.N.Y. County Mar. 10, 1976), relied on by plaintiff, the trial court held that interest was recoverable over and above the $75,000 limitation of liability. This holding was based on the trial judge's findings that had the drafters intended that the "legal fees and costs" language of the Montreal Agreement include prejudgment interest

---

6. Senator Robert Kennedy, on the Senate floor, attacked the damage limitation by stating that "No one questions the fact that the protection now afforded international travelers is woefully inadequate." 111 *Cong.Rec.* 20164 (1965).

they would have said so. *Leppo v. Trans World Airlines,* slip. op. at 3.[7] As previously discussed, however, it is not necessary for interest to have been mentioned in the Agreement for it to be included in the $75,000 limitation. And while it is true that the *Leppo* decision was, in fact, affirmed by the Appellate Division, First Department, the issue of prejudgment interest was not there an issue. *See Leppo v. Trans World Airlines,* 56 A.D.2d 813, 392 N.Y.S.2d 660 (1st Dep't 1977).

Plaintiff next cites to the decisions *Hickey v. Eastern Airlines, Inc.,* 76 Civ. 237 (E.D.La.1981) and *Dispenza v. Eastern Airlines, Inc.,* 76 Civ. 2412 (E.D.La.1982). Neither of these decisions, however, has achieved any precedential value, as neither one ever proceeded to final judgment but settled. In fact, the court in *Hickey* never really reached any final conclusion as to whether interest should be included in the damage limitation.[8] Significantly, the decision in *Domangue* discusses the *Hickey* and *Dispensa* decisions and rejects them. *See Domangue v. Eastern Airlines* at 653.

Finally, plaintiff relies on the decision in *Winbourne v. Eastern Airlines, Inc.,* Civil No. 75–2715 (E.D.La.1982). In that case the district judge justified the awarding of prejudgment interest on the equitable basis that it would be unjust to permit an airline to interminably litigate the case while holding on to the $75,000 it is strictly liable to pay under the Montreal Agreement. In the case at bar, however, no such equitable justifications exist. Until January 29, 1982 the Warsaw/Montreal issue was still hotly contested with the plaintiff vigorously opposing defendant's motion for partial summary judgment that it was liable only for the $75,000 worth of damages as mandated by Warsaw/Montreal. *O'Rourke v. Eastern Airlines,* 16 Avi.L.Rep. 18,367 (E.D.N.Y. Jan. 29, 1982). The court might also indicate that had plaintiff wished to enjoy the benefit of holding the money he could have moved for partial summary judgment to obtain the $75,000 without prejudice to his opportunity to sue for more.[9] *See Milikin Trust Co. v. Iberia,* 11 Avi. 17,331; Kreindler, Aviation Accident Law P. 12A–21 (1978). In sum then, the court finds that plaintiff has demonstrated none of the equitable considerations which might warrant the award of prejudgment interest.

## CONCLUSION

The underlying intent of those nations and signatory airlines ratifying the Warsaw Convention and Montreal Agreement is clear. Both were enacted to shield the airline industry from the dismal prospect of being saddled with the ruinous damage awards commonly associated with aviation disasters. This goal is to be achieved by fixing definitive and absolute limits on airlines' potential liability thereby making insurance of the risks a more definite and less costly proposition. Accordingly then the award of amounts in excess of $75,000 would be a clear frustration of the intent of the framers.

Whatever the wisdom of retaining such an anachronistic limitation today it must be

---

**7.** The decision, in pertinent part, states that "It is this court's opinion that the limitation of liability provision was not intended to include interest, for if it was, the drafters would have used words of art to manifest such an intent."

**8.** The transcript of the proceedings wherein the court held in favor of prejudgment interest reveals the following:

THE COURT: Well, that's the way I am leaving now, gentlemen. I just wanted you to know. I am not sure that will be my final decision, but that's very close to it.

\*   \*   \*   \*   \*   \*

THE COURT: I just might change my mind. . . .
Slip op. at 19–20.

**9.** Plaintiff had, in fact, successfully moved this court for partial summary judgment on the Warsaw/Montreal issue. *See Winbourne v. Eastern Air Lines, Inc.,* 479 F.Supp. 1130 (E.D. N.Y.1979). This decision, however, was reversed and remanded in *Winbourne v. Eastern Air Lines, Inc.,* 632 F.2d 219 (2d Cir.1980). Subsequent to the Second Circuit's decision plaintiff did not move again for summary judgment. Thus it cannot be said that the delay in this case is solely attributable to defendant.

respected until those properly charged with administering it see fit to abandon it.[10]

Therefore, and for all of the foregoing reasons, plaintiff's motion is DENIED.

SO ORDERED.

---

**10.** Recent decisions in two circuit courts serve to highlight some of the dissatisfaction with operation of the Treaty and Agreement. On August 24, 1982 the Ninth Circuit, in the case of *Causey v. Pan American World Airways, Inc.,* opined that the Warsaw/Montreal limitation of liability might constitute a "taking" within the meaning of the Tucker Act giving rise to a claim against the United States.

On September 28, 1982, the Second Circuit, in the case of *Franklin Mint Corporation v. Trans World Airlines,* 690 F.2d 303, held prospectively inapplicable the Warsaw/Montreal cargo limitation of liability.

For a discussion of these cases as well as current activity prompted by them see Kreindler, Judicial Blows to the Warsaw Convention, N.Y.L.J., Nov. 1, 1982, P. 1 Col. 1.