**In re AIR DISASTER AT LOCKERBIE, SCOTLAND ON DECEMBER 21, 1988.**

**No. M.D.L. 799 (TCP).**

United States District Court, E.D. New York.

Oct. 30, 1991.

Steven R. Pounian, Kreindler and Kreindler, New York City, for plaintiff.

James M. Shaughnessy, Windels, Marx, Davies & Ives, New York City, for defendant.

PLATT, Chief Judge.

Defendants move for partial summary judgment dismissing all non-Warsaw Convention claims on the ground that any claim brought against defendants in this action must lie, if at all, under the Warsaw Convention[1]. For the reasons set forth below, defendants' motion is granted.

## BACKGROUND

On December 21, 1988, Pan Am Flight 103 crashed near Lockerbie, Scotland; all 243 passengers and 16 crew members died. Family members of the victims of the crash filed complaints in various federal district courts against Pan Am Airways, Inc. ("Pan Am"), Pan Am World Services, Inc. ("PAWS"), Alert Management Systems, Inc. ("Alert") and Pan Am Corp. ("Pan Am Corp.") (collectively "defendants")[2]. On April 4, 1989, the Judicial Panel on Multidistrict Litigation transferred the suits against the defendants to this Court for consolidated pretrial proceedings. *See* 709 F.Supp. 231 (Jud.Pan.Mult.Lit.1989).

In a previous motion for partial summary judgment, defendants moved to dismiss all punitive damage claims against defendants. This Court granted defendants' motion, holding that punitive damages claims are barred by the Warsaw Convention. *See In re Air Disaster at Lockerbie, Scotland on December 21, 1988*, 733 F.Supp. 547 (E.D.N.Y.1990), *aff'd*, 928 F.2d 1267 (2nd Cir.1991), *cert. denied sub nom., Rein v. Pan American World Airways*, — U.S. ——, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991). In our punitive damages decision, we declined to reach the issue whether defendants Alert and PAWS are governed by the Warsaw Convention in order to allow dis-

---

1. Convention for the Unification of Certain Rules Relating to International Transportation by Air, 49 Stat. 3000, T.S. 876 (1934), *reprinted in* note following 49 U.S.C.App. § 1502.

2. Pan Am Corp. is a Delaware holding company with its principal place of business in New York. In December, 1988 Pan Am Corp. owned one hundred per cent of the stock of PAWS and Pan Am. Pan Am is a New York corporation with its principal place of business in New York. PAWS is a Florida corporation with its principal place of business in Cape Canaveral, Florida. PAWS was a wholly owned subsidiary of Pan Am Corp. until May 31, 1989 when Pan Am Corp. sold its stock in PAWS to Johnson Control, Inc. *See* Shaughnessy Aff't at ¶ 12. Alert is a corporation organized under the laws of Florida. Prior to July 1, 1989 Alert's principal place of business was in Valley Stream, New York. On July 1, 1989, Alert relocated its principal place of business to Miami, Florida. *See id.* at ¶ 11. Prior to the sale of PAWS to Johnson Control, Inc., Alert was a wholly owned subsidiary of PAWS. When the stock in PAWS was sold to Johnson Control, Alert became a wholly owned subsidiary of Pan Am Corp.

covery by plaintiffs on this issue. Discovery has now been completed and the issue has been fully briefed by the parties. We now hold that all defendants in this case, including Alert and PAWS, are governed by the Warsaw Convention.

## DISCUSSION

In pertinent part, Article 17 of the Warsaw Convention states that "[t]he carrier shall be liable for damage sustained in the event of the death ... of a passenger ... if the accident which caused the damage so sustained took place on board the aircraft." Article 24(2) provides that "in the cases covered by Article 17, the provisions of the preceding paragraph shall also apply." The preceding paragraph referred to is Article 24(1), which states that "any action for damages, however founded, can only be brought subject to the conditions and limits set out in this Convention." The key limitation at issue here is the limitation on maximum liability in Article 22, which states "[i]n the transportation of passengers the liability of the carrier for each passenger shall be limited to the sum of 125,000 francs." Under the Montreal Agreement,[3] this limit was raised to $75,-000.

In practical terms, the issue for the parties is whether Alert and PAWS are entitled to this maximum limit on liability as provided by Articles 24 and 22 of the Warsaw Convention, as modified by the Montreal Agreement. The legal issue before the Court is whether Alert and PAWS fall within the meaning of the term "carrier," as that term was envisioned by the signatory parties to the Warsaw Convention and as that term has been interpreted by the courts in the United States.

Our discussion must begin with Second Circuit's opinion in *Reed v. Wiser*, 555 F.2d 1079 (2d Cir.1977). In *Reed*, the Second

Circuit was faced with the question of "whether airline employees are entitled to assert as a defense the liability limitations of the Warsaw Convention." *Id.* at 1081. The Court held that employees of a "carrier" are governed by the Warsaw Convention and thus protected by the liability limitations of Article 22. The Court reasoned, in part, that to allow a suit for unlimited damages against an air carrier's employees would undermine the purpose of the Warsaw Convention "because in most instances carriers are bound to provide their employees with indemnity protection." *Id.* at 1089–90. The Court was concerned with the risk that "plaintiffs would seek to circumvent the Convention's limitation by bringing suit against the pilot or some other employee of the airline involved." *Id.* at 1092.[4]

Although *Reed* employed language suggesting a broader scope—for example, in framing the issue, the Court asked whether the term carrier was "limited to the corporate entity [i.e., the airline], or was intended to *embrace the group or community of persons actually performing the corporate entity's function*," *id.* at 1083 (emphasis added)—its holding was limited to employees. The question now before this Court, whether non-employee agents of a carrier are likewise protected by the liability limitations of the Warsaw Convention, was left open.

Since the Second Circuit decided *Reed*, other courts have considered the question and there appears to be considerable authority for the proposition that *Reed* should be extended to include agents. In *Julius Young Jewelry Manufacturing Co. v. Delta Air Lines*, 67 A.D.2d 148, 414 N.Y.S.2d 528 (1st Dep't 1979), plaintiff sued the airline and an independent contractor hired by the airline to perform inter-line baggage transfer services. The issue before the

---

**3.** In 1966, the Warsaw Convention was modified by a private agreement, known as the Montreal Agreement that increased the maximum liability of signatory carriers to $75,000. *See* Agreement Relating to Liability Limitations of the Warsaw Convention and the Hague Protocol, Agreement CAB 18900, 31 Fed.Reg. 7302 (1966), *reprinted in* note following 49 U.S.C.App. § 1502.

**4.** The contract between Pan Am and Alert contained a provision whereby "[Pan Am] agree[d] to indemnify and hold harmless Alert, its directors, officers, employees and agents, against and from" damages such as have occurred in this case. *See* Plaintiff's Exhibit 5, at p. 2.

Court was "whether agents of air carriers are entitled to assert as a defense the liability limitations of the Warsaw Convention." *Id.* 414 N.Y.S.2d at 529. The Court found that the agent was protected by the liability limitations, reasoning that "[t]o allow an agent ... which is performing services in furtherance of the contract of carriage, and in place of the carriers themselves, to be liable without limit would circumvent the Convention's purposes of providing uniform worldwide liability rules and definite limits to the carrier's obligations." *Id.* at 530.

In *Baker v. Lansdell,* 590 F.Supp. 165 (S.D.N.Y.1984), plaintiff sued the airline's security agent alleging that the agent was responsible for the loss of jewelry that plaintiff claimed was stolen from her handbag. The issue before the Court was whether the agent "may be permitted to take advantage of the Convention's limitations on liability, which by their terms apply only to air carriers." *Id.* at 170. Citing *Reed* and *Julius Young,* the Court held that the Warsaw Convention applied to claims against the airline's security agent.

In addition, the Court noted
that 49 U.S.C. § 1356 requires that security checks, such as the one during which the alleged loss purportedly occurred in the instant case, be performed by employees or agents of the air carrier. Therefore, unless British Airways and Lansdell are violating the law, Lansdell [the agent] is entitled to invoke the liability limitations of the Convention.
The uncontroverted fact that Lansdell had an agreement with British Airways to perform a service, falling within the scope of the Convention, that British Airways would otherwise be required by law to perform itself is dispositive of the issue.

*Id.* at 170–71.

In *Johnson v. Allied Eastern States Maintenance Corp.,* 488 A.2d 1341 (D.C.1985), plaintiff sued the corporation providing sky-cap services for injuries suffered when she was being wheeled through the airport in a wheelchair. The issue was whether the two-year statute of limitations

applicable under the Warsaw Convention applied in the case. The Court stated that: "the purposes underlying the Convention would best be served by a construction which brings under its aegis not only the carrier's employees, as in *Reed,* but also those agents who perform services in furtherance of the contract of carriage." *Id.* at 1345. Applying this standard to the facts in the case, the Court found that the sky-cap service was in "furtherance of the contract of carriage." Thus it held that the two-year Warsaw Convention statute of limitation applied.

In addition to these cases, other courts have cited the *Reed–Julius Young–Baker* line of decisions for the proposition that agents of the carrier are entitled to the protection afforded by the Warsaw Convention. *See, e.g., Lerakoli v. Pan American Airways, Inc.,* 783 F.2d 33, 36 (2d Cir.1986) (noting "decisions holding that the liability limitation for air carrier under the Warsaw Convention should be extended to employees and agents of such carriers"); *Mitchell, Shackleton & Co. v. Air Express Int'l,* 704 F.Supp. 524, 525 (S.D.N.Y.1989) ("A suit initiated by a passenger or shipper in an international transportation against an agent or servant of a carrier is governed by the Convention."); *In re Air Crash Disaster at Gander, Newfoundland on December 12, 1985,* 660 F.Supp. 1202, 1220 (W.D.Ky.1987) ("Clearly, the framers of the Warsaw Convention intended all those concerned with the enterprise of air carrier's international air travel within the scope of the Convention."); *Lillian Garlitz v. Allied Aviation Service Int'l Corp.,* 17 Av.Cas. (CCH) ¶ 17,238 (N.Y.Sup.Ct., New York County, April 14, 1982) (noting that "[d]efendant, as an independent contractor providing services for the airline, which the airline could have provided itself, and which, indeed, it was bound to provide under the contract of carriage, [was] protected by the same statute of limitations under the Warsaw Convention as is the airline").

Plaintiffs argue that to extend the liability limitations of the Convention to all nonemployee agents would create results incompatible with the language of the Con-

vention. For example, plaintiffs warn that if non-employee agents are deemed "carriers," passengers would be entitled to treaty damages against such parties even though they may have nothing to do with the cause of the accident. However, in holding that Alert and PAWS are governed by the Convention's liability limitations, this Court need not create a holding that all agents and contractors of an airline are so protected. The courts addressing this issue have limited the extension of the liability limitations in Article 22 to "those agents who perform services in furtherance of the contract of carriage," *Johnson*, 488 A.2d at 1345, and to those agents performing services within the scope of the Convention that the airline is otherwise required by law to perform. *See Baker*, 590 F.Supp. at 171. It is this latter construction that the Court now adopts.

■ Pursuant to a contract dated September 4, 1986 Alert agreed to provide security services at various airports for Pan Am Airways. Therefore, in the present case, Alert may arguably have acted as an independent agent for Pan Am Airways.[5] It is important to note, however, that Pan Am was under an independent duty to provide security services for its passengers. Under 49 U.S.C.App. § 1356, the Administrator of the Federal Aviation Administration ("FAA") is required to

> prescribe or continue in effect reasonable regulations requiring that all passengers and all property intended to be carried in the aircraft cabin in air transportation or intrastate air transportation be screened by weapon-detecting procedures or facilities employed or operated by employees or agents of the air carrier, intrastate air carrier, or foreign air carrier prior to boarding the aircraft for such transportation.

The regulations so prescribed are found in 14 C.F.R. Part 108, entitled "Airplane Operator Security." *See, e.g.*, 14 C.F.R. § 108.9 (Screening of passengers and property).

Thus Pan Am Airways, as the carrier, had a responsibility under federal statute and regulation to provide specific safety measures for its passengers; and whereas the execution of these security functions may be delegated to agents, such as Alert, the responsibility for the safety of the passengers remains with the carrier, Pan Am Airways. If Pan Am had not arranged for Alert to provide security services, it would have been bound by federal law to have provided those same services. *See Baker*, 590 F.Supp. at 170. In that Alert was providing a service that Pan Am was obligated to perform, we find that Alert is protected by the liability limitations of the Warsaw Convention. *See id.*

### CONCLUSION

In *In re Air Disaster At Lockerbie, Scotland On December 21, 1988*, 928 F.2d 1267, 1273 (2d Cir.1991), *cert. denied sub nom., Rein v. Pan American World Airways*, —— U.S. ——, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991), the Second Circuit held that where the Warsaw Convention applies it provides the exclusive cause of action, i.e., when the State law claim falls within the scope of the Convention, it is pre-empted by the treaty. Therefore, because we find that Alert and PAWS are governed by the Warsaw Convention in this case, any State law claims that might be brought against these defendants in this case are pre-empted.

For the foregoing reasons, defendants' motion for partial summary judgment dismissing all non-Warsaw Convention claims against all defendants must be and hereby is granted.

SO ORDERED.

---

**5.** The Court has considerable doubt about this in light of the interlocking ownership of the

carrier and its "agent" in this case.