**Ester DAZO, an individual, Plaintiff–Appellant,**

v.

**GLOBE AIRPORT SECURITY SERVICES, a Delaware corporation; Trans World Airlines, Inc., a Delaware corporation; Continental Airlines Inc., a Delaware corporation; America West Airlines, a Delaware corporation, Defendants–Appellees.**

No. 00–15058.

United States Court of Appeals, Ninth Circuit.

Submitted May 16, 2001.*

Opinion Filed Oct. 11, 2001.

Filed July 1, 2002.

---

1. Judge Graber was recused.

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Christopher Ashworth, San Jose, CA, for the plaintiff-appellant.

Thomas P. Gmelich, Barry A. Bradley, Glendale, CA, for defendant-appellee Globe Airport Security Services.

Bonnie R. Cohen, Kymberly E. Speer, San Francisco, CA, for defendants-appellees America West Airlines, Inc., Trans World Airlines, Inc., and Continental Airlines, Inc.

Before O'SCANNLAIN, TASHIMA, and THOMAS, Circuit Judges.

## ORDER

TASHIMA, Circuit Judge.

The petition for panel rehearing is granted. The opinions filed October 11, 2001, slip op. 14341, and reported at 268 F.3d 671, are withdrawn, and the opinions filed concurrently with this order are substituted in their place.

## OPINION

We address the reach of the Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), *reprinted in* note following 49 U.S.C. § 40105 (the "Warsaw Convention" or the "Convention"), which applies to international, not domestic, air transportation. We hold that the Warsaw Convention does not apply to an airport security company rendering services to both international and domestic air passengers; nor does it apply to airlines that did not provide international air carriage to the plaintiff. We therefore reverse the judgment of the district court.

### I

On May 12, 1999, Ester Dazo entered Terminal C of the San Jose International Airport, where she intended to board an 11:50 a.m. flight to Toronto, connecting in St. Louis. To enter the secured area of the terminal, persons must pass through a security checkpoint, where they are examined by metal detectors and their possessions are x-rayed. Globe Airport Security Services ("Globe") operates the security checkpoints at Terminal C of San Jose

International on behalf of three air carriers who operate out of that terminal—America West Airlines, Inc., Trans World Airlines, Inc., and Continental Airlines (collectively the "Airlines"). At the time, both ticketed passengers and the general public were allowed to enter the secured area, which contains embarkation gates and retail establishments.

At 10:00 a.m., Dazo approached the terminal's security checkpoint. She placed her carry-on baggage on the x-ray machine conveyor belt, which carried her bags through the x-ray machine and for an additional distance of ten to fifteen feet. By the time Dazo passed through the metal detector, an unknown person or persons had taken her carry-on baggage and disappeared. According to Dazo's complaint, one of the stolen carry-on bags contained jewelry with a wholesale value of approximately $100,000 in the Philippines and considerably more in the United States.

Dazo filed this action against Globe and the Airlines, asserting claims for negligence and breach of the implied contract of bailment. She also sought punitive damages based on defendants' alleged wilful misconduct.

Globe filed a motion to dismiss Dazo's complaint for failure to state a claim upon which relief can be granted. In its motion, which the Airlines joined, Globe argued that Dazo's state law claims were preempted by the Warsaw Convention. The district court granted defendants' motion to dismiss Dazo's complaint, holding that the theft occurred while Dazo was "in the course of embarking," and, therefore, that the Warsaw Convention preempted her claims. The court also held that Dazo's allegations of wilful misconduct were insufficient to escape the Convention's limitation on liability. The district court granted Dazo leave to file an amended complaint in conformity with its ruling,

but entered judgment in defendants' favor after Dazo informed the court that she did not wish to file an amended complaint. Dazo then filed this timely appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II

The district court's order dismissing Dazo's complaint for failure to state a claim and its decision regarding preemption are subject to de novo review. *Transmission Agency of N. Cal. v. Sierra Pac. Power Co.*, 287 F.3d 771, 780 (9th Cir. 2002).

## III

### A

■ "The Warsaw Convention is an international treaty governing the liability of air carriers engaged in the international transportation of passengers and cargo. The Convention creates a presumption of air carrier liability but, in turn, substantially limits that liability." *Ins. Co. of N. Am. v. Fed. Express Corp.*, 189 F.3d 914, 917 (9th Cir.1999). The Convention's purpose is "to create a uniform body of law governing the rights and responsibilities of passengers and air carriers in international air transportation." *Maugnie v. Compagnie Nationale Air France*, 549 F.2d 1256, 1258 (9th Cir.1977). It was intended to protect the "international air transportation industry[, which] was in its beginning stages" at the time the Convention was drafted. *Id.; see also Carey v. United Airlines*, 255 F.3d 1044, 1047 (9th Cir. 2001) (describing the belief " 'that limitations on liability would promote the development of the fledgling commercial air industry by allowing the airlines to predict their exposure to monetary damages' ") (quoting *In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1484

(D.C.Cir.1991)); *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315–16 (1st Cir.1995) (stating that the Convention "arose out of a perceived need to provide a fledgling industry with a uniform set of legal rules that would govern accidents occurring in international air travel"). The Convention caps the liability of "carriers," but it does not define that term. *See* Warsaw Convention, art. 22(3) ("As regards objects of which the passenger takes charge himself, the liability of the carrier shall be limited to 5,000 francs per passenger."); *see also id.* art. 22(1) ("carrier" liability to passengers); *id.* art. 22(2) ("carrier" liability for checked baggage and goods).

■ The Warsaw Convention applies to "all international transportation of persons, baggage, or goods performed by aircraft for hire." *Id.* art. 1(1). It defines "international transportation" in part as "any transportation in which, according to the contract made by the parties, the place of departure and the place of destination, whether or not there be a break in the transportation or a transshipment, are situated ... within the territories of two High Contracting Parties." *Id.* art. 1(2). Therefore, Dazo's flight would be considered an "internaional flight" for purposes of the Convention, even though she was traveling first to St. Louis, and only then to Toronto.

### B

The district court held that Dazo's state law claims were preempted by the Warsaw Convention because Dazo was in the "course of embarking," relying on language found in Article 17 of the Convention and on *Baker v. Lansdell Protective Agency, Inc.,* 590 F.Supp. 165 (S.D.N.Y. 1984). The district court noted that the Warsaw Convention applies only to carriers, but concluded that it applied to Globe because it has been extended to agents of carriers, citing *Kabbani v. Int'l Total Servs.,* 805 F.Supp. 1033 (D.D.C.1992). The facts of this case, however, do not support a finding that Globe is a "carrier" for Warsaw Convention purposes.

It is undisputed that Globe was operating the security checkpoint on behalf of all three air carriers and therefore was acting as the common agent of all three Airlines at the time of the theft.[1] It is also undisputed that only one of the three carriers actually provided the international carriage to Toronto.[2] Furthermore, both domestic and international passengers for all three airlines had to pass through the security checkpoint, as did non-passengers who merely wanted to access the gates or retail establishments beyond the checkpoint. Globe was conducting a security check that every airline must perform under federal law, regardless of whether the flight being boarded is a domestic or international flight, or whether the person being screened is boarding any flight at all.

From these facts, it does not follow that Globe is a Warsaw Convention "carrier." The services being rendered by Globe

---

1. In her complaint, Dazo alleged that Globe was the "non-exclusive agent of the Carriers for the performance of the relevant security services," and the parties do not dispute this characterization on appeal.

2. The record does not disclose which of the three carriers actually provided the international carriage. In her petition for rehearing, Dazo identifies TWA as the carrier which pro-

vided the international carriage. Based on this extra-record assertion, the partial dissent concludes that in screening Dazo, Globe was acting only as TWA's agent. At this stage, however, we do not know the terms of any agreement between Globe and the three airlines under which Globe was rendering services to them and acting as their individual or collective agent.

were not in furtherance of the contract of carriage of an international flight, but were basic airport security services required at all airports by domestic federal law, regardless of the flights' destination and regardless, in fact, of whether the person being screened was even a passenger. *See* 49 U.S.C. §§ 44901–44916. These security screenings are *not* required by the Warsaw Convention. Thus, the Warsaw Convention does not apply to this case.[3]

■ Dazo's case is distinguishable from those cases extending Warsaw Convention "carrier" status to agents of the airline providing the international carriage. None of those cases involves extending "carrier" status to a company that was a dual agent—the agent of more than one airline, including an airline with non-Warsaw Convention status. For example, *Reed v. Wiser*, 555 F.2d 1079 (2d Cir.1977) simply involved the airline's own employees. *See id.* at 1081. *In re Air Disaster at Lockerbie, Scotland*, 776 F.Supp. 710 (E.D.N.Y.1991), involved a security company that was a wholly-owned subsidiary of the airline involved. *See id.* at 711 n. 2. *Kabbani* and *Baker* each involved, as far as the record shows, a security company that was the agent exclusively of the air carrier involved. *See Kabbani*, 805 F.Supp. at 1033–34; *Baker*, 590 F.Supp. at 170. Thus, no case supports the proposition that a security company that is acting as the common agent of multiple airlines, domestic and international, and providing basic airport security services mandated by federal law, regardless of whether the flight involved is domestic or international, should be accorded "carrier" status under

the Warsaw Convention simply because the person whose belongings were stolen happened to be ticketed on an international flight.

■ Nor does the Convention shield those carrier-principals of Globe who did not provide Dazo's international carriage. As noted above, the parties agree that Globe was the "non-exclusive agent of the Carriers for the performance of the relevant security services." When an agent is acting within the scope of its agency, its principal is liable for the agent's acts. *See* Restatement (Second) of Agency § 216 (1958) (stating that "[a] principal is often subject to liability for the unauthorized conduct of an agent with respect to matters which, under the agreement creating the relation, he has the right to direct"); *id.* § 265 (stating that a principal is liable for torts of an agent when the agent is acting within the apparent scope of employment). According Warsaw Convention "carrier" status to the airlines that did not provide the international carriage would conflict with this common law rule and grant the remaining two carriers a windfall in the form of the Warsaw Convention's limitation-of-liability benefit. This would not further the purposes or policy of the Warsaw Convention.

■ Under long-accepted agency principles, "[a] person may be the servant of two masters, not joint employers, at one time as to one act, if the service to one does not involve abandonment of the service to the other." *Id.* § 226; *see also Abraham v. United States*, 932 F.2d 900, 903 (11th Cir.1991) (citing Restatement for the prop-

---

3. In the wake of the tragic events of September 11, 2001, Congress enacted the Aviation and Transportation Security Act, Pub.L. No. 107–71, 2002 U.S.C.C.A.N. (115 Stat.) 597 (2001), enhancing security measures at the nation's airports, including the eventual fed-

eralization of the passenger screening function performed by Globe in this case. These developments only serve to emphasize that airport security and passenger screening are part of a national program wholly independent of the Warsaw Convention.

osition that "a single act may be done with the purpose of benefiting two masters and both may then be liable for the servant's negligence"). In operating the security checkpoint, Globe, therefore, was acting on behalf of all three Airlines, not solely on behalf of the carrier-principal who actually provided Dazo's international carriage. If not for the Warsaw Convention's limitation of liability, therefore, Globe and all three Airlines would be liable for Dazo's loss. At most, therefore, only the carrier-principal who provided the international carriage is entitled to the Convention's limitation of liability. Both Globe, as agent of the non-Warsaw Convention carriers, and the non-Warsaw Convention carriers themselves should be held accountable for any loss proven without regard to the Convention's limitation of liability.

### C

■ The district court also dismissed Dazo's claim for wilful misconduct, concluding that she had failed to state a claim for willfulness that would avoid the limitation of liability imposed by Article 25 of the Warsaw Convention.[4] The Warsaw Convention provides the exclusive remedy for claims arising out of a carrier's intentional misconduct. *Carey,* 255 F.3d at 1051. If a plaintiff establishes wilful misconduct by the carrier, Article 25 lifts the Convention's limits on liability, but the Convention remains the exclusive source for the plaintiff's remedy. *Id.* at 1049–51. Thus, if Dazo can establish wilful misconduct, the Convention's limits on liability would be lifted with respect to the carrier that provided her international carriage. We agree with the district court, however, that the complaint's allegations are insufficient to establish wilful misconduct.

■ In support of her wilful misconduct claim, Dazo alleged that Globe and the Airlines knew that similar thefts had occurred at the airport but failed to make reasonable efforts to prevent such thefts, thereby subjecting her to an unreasonable degree of risk. The district court held that this allegation was insufficient to constitute wilful misconduct because her grievance was "essentially that Globe failed to completely prevent thefts at the security checkpoint.... [A]bsent concrete allegations of intentional performance of acts committed with the knowledge that the theft of baggage would occur ... a stolen bag is simply not tantamount to wilful misconduct." The district court did not err when it concluded that Dazo's allegations do not rise to the level of Article 25 wilful misconduct.

In *Insurance Company of North America,* we held that California law, not federal common law, applied to a determination of whether theft by an employee constituted "wilful misconduct" under Article 25(1) of the Warsaw Convention. *Ins. Co. of N. Am.,* 189 F.3d at 919–21. *But see id.* at 923–29 (W.Fletcher, J., concurring) (disagreeing with the conclusion that California law applied and discussing why federal common law should apply); *see also Piamba Cortes v. Am. Airlines, Inc.,* 177 F.3d 1272, 1284–87 (11th Cir.1999) (discussing interpretations of "wilful misconduct" for Article 25 purposes in federal circuit courts, none of which applied state law), *cert. denied,* 528 U.S. 1136, 120 S.Ct. 980, 145 L.Ed.2d 930 (2000); *Koirala v. Thai Airways Int'l, Ltd.,* 126 F.3d 1205, 1208–10

4. Article 25 provides:
   The carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability, if the damage is caused by his wilful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be equivalent to wilful misconduct.
   Warsaw Convention, art. 25(1).

(9th Cir.1997) (relying on Ninth Circuit definition of "wilful misconduct" in affirming district court, which "appl[ied] U.S. federal law" and found that the airline crew's "wilful misconduct" caused the plane to crash); *Saba v. Compagnie Nationale Air France,* 78 F.3d 664, 667–69 (D.C.Cir.1996) (relying on federal standard of "willful misconduct" in determining whether Article 25 applied). Under either California law or federal common law, Dazo's allegations do not establish wilful misconduct for Article 25 purposes.

▬▬ Under California law, "willful or wanton misconduct is separate and distinct from negligence.... Unlike negligence, which implies a failure to use ordinary care, and even gross negligence, which connotes such a lack of care as may be presumed to indicate a passive and indifferent attitude toward results, willful misconduct is not marked by a mere absence of care. Rather, it involves a more positive intent actually to harm another or to do an act with a positive, active and absolute disregard of its consequences." *Calvillo–Silva v. Home Grocery,* 19 Cal.4th 714, 80 Cal.Rptr.2d 506, 968 P.2d 65, 76 (1998) (citations and internal quotation marks omitted), *disapproved on other grounds, Aguilar v. Atl. Richfield Co.,* 25 Cal.4th 826, 107 Cal.Rptr.2d 841, 24 P.3d 493, 512 n. 19 (2001). Alternatively, " '[w]ilful misconduct under the Convention means the intentional performance of an act with knowledge that the ... act will probably result in injury or damage or the intentional performance of an act in such a manner as to imply reckless disregard of the probable consequences.' " *Koirala,* 126 F.3d at 1209 (quoting *Johnson v. Am. Airlines, Inc.,* 834 F.2d 721, 724 (9th Cir.1987) (ellipsis in the original)). Dazo does not allege that defendants had a positive intent to harm her, or that they had a positive, active and absolute disregard, or even reckless disregard, for the consequences of any lapses in security. Thus, the district court's conclusion that Dazo's allegations do not rise to the level of wilful misconduct is not erroneous.[5]

Neither Globe nor the air carriers that did not provide Dazo's international air carriage should be entitled to the Warsaw Convention's limitation of liability. The district court's dismissal of Dazo's claims, as preempted by the Warsaw Convention, is therefore reversed and the case remanded for further proceedings.

**REVERSED and REMANDED.**

O'SCANNLAIN, Circuit Judge, concurring in part and dissenting in part.

I concur in the court's affirmance of Dazo's wilful misconduct claim, but I must respectfully dissent from its holding that Globe, as agent of TWA, is not entitled to the protection of the Warsaw Convention.

At the time of Dazo's flight, airlines were charged by federal statute with the responsibility to screen all passengers and property. *See* 49 U.S.C. § 44901 (2000).[1]

---

5. The Convention's wilful misconduct standard was later amended to the formulation "intentionally or recklessly with knowledge that damage would probably result." *See Carey,* 255 F.3d at 1047 n. 11 (citing Montreal Protocol No. 4 to Amend the Warsaw Convention, *reprinted in* S. Exec. Rep. No. 105–20, at 21–32 (1998)). Montreal Protocol 4 went into force in the United States on March 4, 1999. *Id.* Our analysis applies to either formulation of Article 25: Dazo's allegations cannot support the conclusion that the defendants acted intentionally or recklessly with knowledge that the loss of Dazo's bag would probably result.

1. In the wake of September 11, 2001, Congress enacted the Aviation and Transportation Security Act, Pub.L. No. 107–71, 115 Stat. 597 (2001) (codified in scattered sections of 49 U.S.C.). The Act shifts the responsibility

TWA, which provided Dazo carriage to Toronto, delegated its screening responsibility to Globe.[2] Thus, Dazo concedes, as she must, that Globe acted as TWA's agent when she passed through the security checkpoint. The Warsaw Convention extends to an airline's agents and employees, a premise not challenged by the majority. *See, e.g., Reed v. Wiser,* 555 F.2d 1079, 1089–92 (2d Cir.1977); *Kabbani v. Int'l Total Servs.,* 805 F.Supp. 1033, 1039–40 (D.D.C.1992); *In re Air Disaster at Lockerbie, Scotland on Dec. 21, 1988,* 776 F.Supp. 710, 712–14 (E.D.N.Y.1991); *Baker v. Lansdell Protective Agency, Inc.,* 590 F.Supp. 165, 170–71 (S.D.N.Y.1984). Hence, to the extent that Globe acts as agent of TWA, it must be afforded the protection of the Warsaw Convention. *See, e.g., In re Air Disaster,* 776 F.Supp. at 714 (holding airport security company protected by the Convention).

The majority implies that if Globe provided screening *only* for TWA, Globe would indeed fall within the Convention. *Supra* at 939.[3] Nevertheless, it claims the fact that Globe also provides screening for two other airlines at the checkpoint somehow destroys its Convention status. According to the majority, an agent of multiple airlines can never fall within the Convention because the agent performs services for airlines other than the one that provided international carriage.

The majority's approach suffers from a fundamental misunderstanding of agency principles. An agent may serve two masters at once, as long as service to one does not involve abandonment of service to the other. *See Restatement (Second) of Agency* § 226 (1958); *see also Ward v. Gordon,* 999 F.2d 1399, 1404 (9th Cir.1993). Globe served multiple masters; TWA, America West Airlines, and Continental Airlines each arranged for Globe to provide screening at Terminal C of the airport. However, Globe's service to one airline in no way involved an abandonment to the others. Globe was fulfilling its duty to TWA when Dazo passed through security. In short, Globe's association with America West and Continental does not destroy its agency relationship with TWA.

Apart from proper application of agency principles, common sense dictates that the majority's approach is misguided. Under that approach, a security company serving one airline is entitled to the protection of the Convention, but a security company serving multiple airlines is not. Why should the arbitrary happenstance of whether a security service contracts with multiple partners determine whether a person's claims are preempted by the Warsaw Convention?[4]

for screening from the airlines to the federal government effective November 19, 2001.

**2.** While the record does not reveal which airline provided international carriage, Dazo identified TWA as the airline in her petitions for rehearing. Thus, for ease of discussion, I refer to TWA as the airline that provided carriage to Toronto. Of course, Globe's Convention status is not affected by the absence of the airline's identity in the record. It is undisputed that Globe acted as the agent for the airline (whichever one it was) that provided international carriage.

**3.** I recognize that the majority does not explicitly concede this point. However, the majority distinguishes several cases extending Convention status to an airline's agent *solely* on the ground that in those cases the agent served one airline exclusively. *Supra* at 939. Thus, the majority implicitly concedes that the result in this case would be different if Globe served only TWA.

**4.** Apparently, even Dazo appreciates the deficiency of the majority's approach. Judge Tashima articulated this approach in his dissent to the original panel decision. In her twelve page petition for rehearing, Dazo afforded merely a single sentence in support, under the heading "Miscellaneous."

Of course, the majority *is* correct in saying that the protections of the Warsaw Convention do not extend to America West and Continental. The Warsaw Convention is limited to airlines and its agents that actually provide international carriage, and neither America West nor Continental provided any carriage to Dazo whatsoever. Accordingly, while TWA and Globe are entitled to Warsaw Convention status, America West and Continental are not.

Nonetheless, I disagree with the majority's decision to reinstate Dazo's claims against America West and Continental. Dazo has made no attempt to distinguish among the three airlines she has sued. Indeed, she waited until her petitions for rehearing to even identify which airline provided her carriage to Toronto. In these circumstances, Dazo has waived any claim against America West and Continental. *See, e.g., Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir.1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief.").

I appreciate the fact that the tragic events of September 11, 2001 have cast this case in a different light from when it was first taken under submission. To some, the experience of September 11 undoubtedly makes it far less palatable to shroud airport security companies within the liability caps of the Warsaw Convention. Globe's parent, after all, screened passengers for American Airlines Flight 11, which was used to destroy the north tower of the World Trade Center. *See, e.g.,* Milo Geyelin, *Judge Wants Victims of Sept. 11 Who Sue to Know Risks of Action, Wall St. J.,* Apr. 12, 2002, at B2; Patricia Hurtado, *Victim's Kin Sues Airline, Newsday* (New York), Apr. 9, 2002, at A3. But this nation's recent tragedy simply does not bear on the legal question presented in this case, and does not justify a panel majority reversing course. Our ju-dicial charge is to stand above the inflamed passions of the public, however much we may share them; we must apply the law faithfully and evenhandedly. *See LaVine v. Blaine Sch. Dist.,* 279 F.3d 719, 728 (9th Cir.2002) (Kleinfeld, J., dissenting from denial of rehearing en banc) ("[The] ... law ought to be based on neutral principles, and should not easily sway in the winds of popular concerns, for that would make our liberty a weak reed that swayed in the winds.").

I respectfully dissent.

Opinion by Judge TASHIMA; Partial Concurrence and Partial Dissent by Judge O'SCANNLAIN.