**Philip and Beth WAXMAN, Plaintiffs,**

v.

**C.I.S. MEXICANA DE AVIACION, S.A. DE C.V., a Mexican Corporation; and Signature Flight Support Corporation, a Delaware Corporation, Defendants.**

**No. 97 Civ. 7299(DLC).**

United States District Court, S.D. New York.

July 14, 1998.

Mark D. Zuckerman, Fischer & Burstein, P.C., New York City, for Plaintiffs.

Michael J. Holland, Maureen Moran, Condon & Forsyth, New York City, for Defendants.

*OPINION and ORDER*

COTE, District Judge.

Plaintiffs Philip and Beth Waxman, husband and wife, filed this action on October 1, 1997, alleging that the defendants negligently caused Mr. Waxman to sustain injuries during an international flight. Specifically, the Complaint asserts that Mr. Waxman was stuck in his right leg by a hypodermic needle that was protruding from the fabric of the seat immediately in front of his seat on a flight from New Jersey to Mexico. Mr. Waxman seeks compensatory damages from defendants Mexicana De Aviacion, S.A. De C.V. ("Mexicana"), the airline on whose plane he flew, and Signature Flight Support Corporation ("Signature"), the airline's cleaning subcontractor; Mrs. Waxman has filed a derivative claim for loss of consortium.

The defendants have now moved for partial summary judgment under Rule 56, Fed. R.Civ.P., seeking in effect a declaration that the aggregate amount of damages recoverable in this action is limited to $75,000, pursuant to the "Warsaw Convention." [1] For the reasons set forth below, the motion is granted.

## BACKGROUND

On January 25, 1997, Mr. and Mrs. Waxman flew from Newark, New Jersey to Cancun, Mexico aboard Mexicana Flight 877. The record indicates that Signature was at that time under contract to provide certain ground support services, including airplane interior cleaning services, to Mexicana's aircraft at Newark International Airport. Mexicana had contracted directly for such services with non-party Deutsche Lufthansa, A.G. ("Lufthansa"), which had in turn sub-contracted certain of its obligations, including aircraft cleaning duties, to Signature. [2] During the flight, according to the Complaint, Philip Waxman was stuck in his right leg by a hypodermic needle that was protruding from the fabric in the back of the seat that was directly in front of his. Mr. Waxman received medical treatment upon his arrival in Cancun, and again upon his return to the United States; he also was given an HIV test and a vaccine for hepatitis. The Waxmans allege that it was the defendants' negligence in failing to remove the needle during pre-flight cleaning that was the cause of Mr. Waxman's injuries.

As a result of his having been stuck in the leg by the needle, and in addition to this obvious physical injury, Mr. Waxman claims to have suffered an exacerbation of pre-existing psychiatric conditions caused by his "uncertainty surrounding the needle"—ostensibly a fear of contracting a serious disease such as AIDS. Mr. Waxman also alleges that the injury prevented him and his wife from pursuing their plan of starting a family, inasmuch as the couple was advised not to engage in unprotected sex for a six-month period following the incident, presumably until it was conclusively established that he had not contracted any serious disease from the needle. Since the incident, Philip Waxman has tested negative for HIV and Beth Waxman has become pregnant. At no time did the Waxmans have either the needle or the fluid in the needle tested for HIV or any other disease.

## STANDARD

Summary judgment may not be granted unless the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving

---

1. *See* The Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 U.S.C. § 40105, and the Agreement Relating to Liability Limitations of the Warsaw Convention and the Hague Protocol, 31 Fed.Reg. 7302 (1966), 49 U.S.C. § 40105 note (collectively, "Warsaw Convention" or "Convention").

2. The record thus reflects that Signature had no direct contract with Mexicana. The Waxmans make much of this point in arguing that Signature may not benefit from the Convention's liability limitations, to the extent that such limitations even apply to Mexicana. These arguments will be addressed below.

party bears the burden of demonstrating the absence of a material factual question, and in making this determination the Court must view all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts asserted by the movant. Rule 56(e), Fed.R.Civ.P.; *accord Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994). In deciding whether to grant summary judgment, therefore, this Court must determine (1) whether a genuine factual dispute exists based on the evidence in the record, and (2) whether the fact in dispute is material based on the substantive law at issue.

### DISCUSSION

The relevant facts being undisputed, the Court is faced with a fairly narrow legal question. The defendants contend that this action is governed by the Warsaw Convention, which applies to suits arising from international transportation of persons by aircraft for hire. *See* 49 U.S.C. § 40105 note. According to the defendants, therefore, under the terms of the Convention the Waxmans' state law claims are preempted and their recovery is limited to $75, 000 in the aggregate.[3] The Waxmans dispute the Convention's applicability to this case on several grounds, but the present motion raises two issues primarily: (1) whether Mr. Waxman's injury may be deemed an "accident" within the meaning of the Convention, such that the incident falls within the Convention's purview; and (2) whether defendant Signature, as a subcontractor of Mexicana, may be con-

sidered a "carrier" under the Convention and thus entitled to the liability limitations thereof. These issues will be addressed in turn.

A. *Applicability of the Warsaw Convention: The Definition of "Accident"*

◼ As a preliminary matter, it is evident that the Warsaw Convention preempts all state law claims within its scope.[4] *See Fishman v. Delta Air Lines, Inc.,* 132 F.3d 138, 141 (2d Cir.1998); *In re Air Disaster at Lockerbie, Scotland,* 928 F.2d 1267, 1273 (2d Cir.1991) (*"Lockerbie"*). Accordingly, because there is no indication that the Convention is intended to "preserve a right to a state law cause of action in addition to the action provided under the Convention itself," *Lockerbie,* 928 F.2d at 1274, if the Convention is found to apply in this case, any state law claims by the Waxmans will be preempted.

◼ Article 17 of the Convention provides:

The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

49 U.S.C. § 40105 note. The Second Circuit has established a three part test for determining whether Article 17 applies in a given case such that state law claims are preempted. The test requires that:

(1) an accident has occurred, in which (2) a passenger suffered death, wounding, or any other bodily injury, and (3) the accident occurred either on board the aircraft or in the course of embarking or disembarking from the plane.

*Tseng v. El Al Israel Airlines,* 122 F.3d 99, 102 (2d Cir.1997). The defendants contend, and the Waxmans do not dispute, that the

---

3. The defendants assert, and the Waxmans do not dispute, that the maximum amount of damages recoverable in this action, should the Convention be found to apply, is $75,000 total, in respect of the claims by both Mr. and Mrs. Waxman.

4. Of course, treaties such as the Warsaw Convention are considered the supreme law of the land under the Supremacy Clause, U.S. Const. Art. VI, cl. 2, and thus preempt any state laws with which they conflict, *see Baker v. Lansdell Protective Agency, Inc.,* 590 F.Supp. 165, 167 (S.D.N.Y. 1984).

second and third prongs of the test are satisfied in this case insofar as Philip Waxman suffered bodily injury while on board the aircraft. It is with respect to the first prong—the definition of an "accident" for purposes of Article 17—that the parties disagree.

■ The controlling interpretation of the term "accident" is found in *Air France v. Saks*, 470 U.S. 392, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985):

> [L]iability under Article 17 of the Warsaw Convention arises only if a passenger's injury is caused by an *unexpected or unusual event or happening that is external to the passenger.* This definition should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries.

*Id.* at 405, 105 S.Ct. 1338 (emphasis added). The defendants cite this definition of "accident" in support of their argument that the Warsaw Convention furnishes the Waxmans' exclusive cause of action; that is, the defendants argue that being stuck by a hypodermic needle is the sort of "unexpected or unusual event" contemplated by the definition. The Waxmans correctly note, however, that the Warsaw Convention does not apply to certain injuries arising out of the normal procedures and operations of an air carrier. *See, e.g., Saks,* 470 U.S. at 406, 105 S.Ct. 1338; *Tseng,* 122 F.3d at 103–104. In *Tseng,* for example, the Second Circuit held that an airline passenger subjected to an invasive pre-flight security search had not suffered an "accident" within the meaning of the Convention, inasmuch as her claims of emotional injury from the search involved only her "personal reaction to the routine operating procedures of the defendant airline." 122 F.3d at 103.

The Waxmans seek to extend the holding of *Tseng* to all injuries arising from a carrier's normal operations, a result at odds with the Second Circuit's more recent decision in *Fishman v. Delta Air Lines, Inc.,* 132 F.3d 138 (2d Cir.1998). In *Fishman,* a child passenger was injured when a flight attendant, attempting to soothe the child's earache with a hot compress, spilled scalding water on the child's neck and shoulders. *See id.* at 140–41. The airline sought protection under the Warsaw Convention's recovery limitations and prevailed, notwithstanding the plaintiffs' argument that the incident was not an "accident" but one that arose in the course of the airline's normal operations. *Id.* at 141–43. The court in *Fishman* made clear that "an injury resulting from routine procedures in the operation of an aircraft or airline can be an 'accident' if those procedures or operations are *carried out* in an unreasonable manner." 132 F.3d at 143 (emphasis in original). Here, the defendants' failure to remove the hypodermic needle may safely be viewed as an unusual, unexpected departure from ordinary procedures. Consequently, it is *Fishman* and not *Tseng* that provides the appropriate analogy to the conduct at issue in this case, and therefore, under *Fishman,* the injury caused by the defendants' faulty cleaning of the airplane is properly deemed to have resulted from an "accident" within the meaning of the Warsaw Convention.[5]

### B. *Applicability of the Warsaw Convention's Liability Limitations to Signature*

The remaining question for purposes of this motion is whether Signature may avail itself of the Convention's liability limitations. The Waxmans contend that it may not, essentially for two reasons: first, because the contracts annexed to the defendants' moving papers are inadmissible and/or otherwise technically ineffective to establish the pertinent contractual relationships that would afford such protection; and second, because the contracts, even if valid and admissible,

---

5. The parties' memoranda discuss the law relating to a plaintiff's ability to recover for emotional damages caused by a fear of contracting the AIDS virus. This issue, however, is beyond the scope of the defendants' motion, which seeks only to resolve whether the damage limitations of the Convention apply to this action. The question whether the Waxmans can recover for their alleged injuries under the Convention's substantive law is entirely separate from whether the Convention applies in the first instance such that their damages will be capped should they succeed in proving them. In short, the Court will not address at this time the merits of the Waxmans' claims under the Convention.

show only that Signature had contracted with a subcontractor of Mexicana, the covered air carrier, but not that Signature had a direct contractual or agency relationship with Mexicana. Neither of these arguments has merit. The latter objection, being more substantive, is better addressed first.

### 1. Subcontractor Liability Under the Convention

■ The Waxmans concede, as they must, that courts within this Circuit have held that employees and agents of an air carrier may stand in the carrier's shoes and have the liability limits of the Warsaw Convention applied to them. *See, e.g. American Home Assurance Co. v. Jacky Maeder (Hong Kong) Ltd.,* 969 F.Supp. 184, 191 (S.D.N.Y.1997) ("It is fairly well established in this Circuit that the agent of an air carrier may claim the limitation of liability provisions found in the Convention.") (quoting *Royal Ins. Co. v. Amerford Air Cargo,* 654 F.Supp. 679, 682 (S.D.N.Y.1987)); *Reed v. Wiser,* 555 F.2d 1079, 1089–93 (2d Cir.1977) (applying Convention's limitations to airline employees); *In re Air Disaster at Lockerbie,* 776 F.Supp. 710, 712–14 (E.D.N.Y.1991) (applying limits to non-employee agents); *Baker v. Lansdell Protective Agency, Inc.,* 590 F.Supp. 165, 170–71 (S.D.N.Y.1984) (same). *See also Kabbani v. International Total Servs.,* 805 F.Supp. 1033, 1038–40 (D.D.C.1992); *Julius Young Jewelry Mfg. Co. v. Delta Air Lines,* 67 A.D.2d 148, 414 N.Y.S.2d 528, 529–30 (1st Dep't 1979). The Waxmans contend, however, that this expanded protection does not extend to a mere subcontractor of a contractor to an air carrier (even assuming that such a relationship existed and is provable in this case, as discussed below). In other words, according to the Waxmans, "no Federal Court in this Circuit has ever held that an entity which is neither an agent of nor in privity of contract with the carrier may invoke the liability limitations of the Warsaw Convention."

■ The Convention's liability limitations apply only to "carriers," a term that the Convention fails to · define; moreover, the parties agree, and this Court's research confirms, that no controlling case law addresses the liability of a subcontractor under these provisions. Nevertheless, the Waxmans having conceded that "employees and agents" of a covered entity may benefit from the limitations, it would be elevating form over substance to hold that parties to valid subcontracting agreements with a covered entity are not similarly protected from unlimited liability under the Convention. The Court bases this conclusion on several considerations.

First, the rationale underlying the decision in *Reed,* in which the Second Circuit first extended the Convention's coverage to airline employees, supports a further extension of coverage to subcontractors. After conducting a thorough examination of the history and purpose of the Convention, the *Reed* court concluded that its "basic principle" required that air carriers be "protected from having to pay out more than a fixed and definite sum for passenger injuries sustained in international air disasters." 555 F.2d at 1089. Accordingly,

> [t]o permit a suit for an unlimited amount of damages against a carrier's employees for personal injuries to a passenger would unquestionably undermine this purpose : ..., since it would permit plaintiffs to recover from the carrier through its employees damages in excess of the Convention's limits.

*Id.* The Second Circuit recognized that withholding coverage from air carrier employees would disserve the Convention's objectives, especially insofar as: (1) most carriers afford their employees indemnity protection, "at their employees, insistence," thus making it "inconceivable that airlines could long operate without reimbursing their employees for this cost of doing business," which would in turn circumvent the Convention's purpose of limiting airlines' exposure, *id.* at 1090; and (2) the Convention's goal of "establish[ing] a uniform body of world-wide liability rules to govern international aviation" was designed (at least in part) precisely to prevent suits against pilots or other airline employees that would require courts "to determine what domestic law applies and whether under that law recovery might be had for an amount

greater than that recoverable against the airline," *id.* at 1090, 1092.

Simply put, the failure to extend liability limitations to subcontractors would subvert the Convention's aims in exactly the same fashion. Many subs, given the rule espoused by the Waxmans, would likely refuse to contract with air carriers absent a supplementary indemnification agreement; but such an agreement would of course impermissibly enable "plaintiffs to recover from the carrier through its [subcontractors] damages in excess of the Convention's limits." *Id.* at 1089. In addition, it would contravene the goal of uniformity in aviation liability rules if courts were forced to determine and interpret the local tort law applicable to every subcontractor that might be sued along with a covered air carrier. In short, under the framework of *Reed*, a failure to limit subcontractors' liability is just as violative of the Convention's purposes as a failure to afford such coverage to an airline's employees.

A second important consideration concerns the reasoning of cases that extend the *Reed* analysis to situations involving not employees of covered air carriers, but their agents. For example, New York's Appellate Division cited *Reed* extensively in assessing the liability of an independent contractor that had been hired by airlines to transfer baggage between connecting flights; the court held that "the liability limitations of the Convention apply to an air carrier's agent performing functions the carrier could or would, as here, otherwise perform itself." *Julius Young*, 414 N.Y.S.2d at 530. In other words, under the governing theory of the Convention, it is illogical to withhold liability limitations from air carriers' agents performing services "in furtherance of the contract of carriage, and in place of the carriers themselves." *Id. See also Kabbani*, 805 F.Supp. at 1039; *Lockerbie*, 776 F.Supp. at 714; *Baker*, 590 F.Supp. at 170–71. There is no dispute in this case that the carrier, Mexicana, had an obligation

generally to provide for its passengers' safety, which included in particular a duty to clean the airplane prior to departure.[6]

Moreover, the cases analyzing agents' access to the Convention's liability limitations do not focus on the precise nature of the contractual relationship between the carrier and agent. *See, e.g., Baker*, 590 F.Supp. at 171 ("The precise nature of the parties' arrangement is not material under *Reed* and *Julius Young* to [the contractor's] right to avail itself of the liability protections of the Convention."). Instead, courts have discussed the principle governing an agent's liability more generally, *see, e.g., Lerakoli, Inc. v. Pan Am. World Airways, Inc.*, 783 F.2d 33, 36 (2d Cir.1986) (noting the "reasoning of this and other courts ... holding that the liability limitations for air carriers under the Warsaw Convention should be extended to employees and agents of such carriers") (citing *Reed, Baker*, and *Julius Young*), or have expressly held that the Convention's applicability is determined merely on the basis of whether the agent's activities were "in furtherance of the contract of carriage," *Johnson v. Allied Eastern States Maintenance Corp.*, 488 A.2d 1341, 1345 (D.C.App. 1985) ("[W]e believe that the purposes underlying the Convention would best be served by a construction which brings under its aegis not only the carrier's employees, as in *Reed*, but also those agents who perform services in furtherance of the contract of carriage."); *accord Julius Young*, 414 N.Y.S.2d at 530. *See also Jacky Maeder*, 969 F.Supp. at 191–92 (recognizing in context of motion to amend answer that cargo warehousing agent would be entitled to liability limitation to same extent as would its carrier principal).

The Waxmans' final claim on this issue is equally unavailing; they appear to argue that Signature could not have been Mexicana's agent because Signature functioned as an independent contractor. In support of this

---

6. The Complaint alleges such a duty through its assertions, *inter alia*, that Signature was "negligent, reckless and careless in [its] maintenance, supervision, management and cleaning of the ... aircraft"; that it "had or should have had actual knowledge of the existing dangerous and defective condition then and there existing, namely the Needle," which condition it "should have remed-

ied"; that its "negligence and/or recklessness ... consisted of, but was not limited to failing to remove the Needle prior to flight 877 ... for the protection of persons such as [Mr. Waxman]"; and that it "failed to properly inspect and/or clean the seat pocket located in front of [Mr. Waxman's] seat." Nearly identical allegations are repeated with respect to Mexicana.

argument, the Waxmans cite *Cubby, Inc. v. CompuServe, Inc.*, 776 F.Supp. 135, 142–43 (S.D.N.Y.1991), a decision on the law of libel that has no application in the Warsaw Convention context. In any event, the general statement of agency principles in *Cubby* has no bearing on the decision here given the existence in the record of the subcontractor agreements between Mexicana and Lufthansa, and Lufthansa and Signature; those contracts plainly required Signature (and Lufthansa) to "act[ ] subject to [its] principal's direction and control," which the Waxmans themselves concede is "[a]n essential characteristic of an agency relationship." [7]

■ In sum, the Court concludes that the liability limitations afforded to air carriers under the Convention extend at least to their employees and agents who perform services fundamental to, or in furtherance of, the carriage enterprise, and which the carrier itself would be bound to perform—even if not technically required by statute—pursuant to its contract with its customers. Moreover, the Court sees no logical reason, and has been presented with no persuasive contrary argument, why this principle should not apply equally to the subcontractors of a carrier's agent, especially where, as here, the subcontracting agreement explicitly requires the subcontractor (through the agent) to perform its services "according to the Carrier's instructions." In sum, assuming the contracts establishing the pertinent subcontracting arrangement are valid and admissible, Signature will be entitled to benefit from the liability limitations afforded to Mexicana under the Convention.

### 2. Admissibility and Effectiveness of the Subcontracting Agreements

The Waxmans' objection to the contracts that are necessary to establish an agency or subcontracting relationship between Signature and Mexicana is expressed as follows:

> Other than the affidavit of counsel, which is not admissible evidence, there is no affidavit of anyone from Mexicana, Lufthansa or Signature which states that the annexed contracts were the contracts in effect at the time of the incident or which lays out facts which establish an agency relationship between Mexicana and Signature.

In addition, the Waxmans' opposing statement of undisputed facts, pursuant to Local Civil Rule 56.1, asserts that the defendants failed to provide any admissible evidence to establish that Signature performed ground handling services for Mexicana; that the contracts would have to be "accompanied by affidavits or deposition testimony" in order to constitute such evidence; and that the contracts in any event failed to establish an agency relationship between Mexicana and Signature.

The last claim, for the reasons stated above, is meritless; the contracts plainly establish a subcontracting arrangement between Mexicana and Signature, which the Court finds in the context of this case to provide the necessary relationship to confer the Convention's liability protections upon

---

7. The two contracts are essentially identical "Ground Handling Agreements": the first identifies Mexicana as "the Carrier" and Lufthansa as "the Handling Company," assigned to perform the cleaning and other tasks that were the subject of the contract; the second describes Lufthansa as "the Carrier" and Signature "the Handling Company." Both contracts expressly provide that the "Handling Company," Lufthansa and Signature respectively, agrees to "[c]lean and tidy flight deck *according to the Carrier's instructions* and, if specified, *under the control of a person authorized by the Carrier*," through the completion of numerous designated tasks, including emptying ash trays, disposing of litter, mopping floors, and "*clearing waste from seat back stowages and racks.*" (Emphasis added.)

The second agreement further specifies that the Services and accompanying rates set forth herein are applicable only to aircraft operated by [Mexicana] hereinafter, the "Subcontracted Carrier", the Services for which are hereby subcontracted from the Carrier to the Handling Company.

Thus the agreements, considered together, make clear that Mexicana contracted responsibility for the subject cleaning services to Lufthansa, which subcontracted that responsibility to Signature, which in turn was bound to perform those services on the terms as set forth initially by Mexicana. Accordingly, the contracts surely did *not* allow Signature (or Lufthansa) to perform work "according to [its] own methods, and without being subject to the control of [its] employer, except as to the product or result of [the] work," which the Waxmans claim to be the hallmark of independent contractor status.

Signature. Indeed, the Waxmans had a full opportunity to conduct discovery in this case, and have adduced absolutely no evidence to suggest that the contracts at issue are not what they purport to be or were not the agreements governing the parties, relationships here. Simply put, the Waxmans plainly knew to sue Signature, which was responsible for "clearing waste from seat back stowages and racks," in connection with the needle incident.

The Waxmans' other contentions do raise legitimate points, however, even if technicalities. First, while the contracts at issue indicate that they are "effective from" a date in September 1993, the Waxmans are correct that neither contract, nor any other legally sufficient affidavit or exhibit, demonstrates that the contracts were in effect during the relevant time period, January 1997, when the Waxmans made their flight. Second, as implied above, the Waxmans also are correct that the contracts were improperly introduced through the affidavit of defense counsel, and not through affidavits of the contracting parties or other means. The defendants failed to respond in their reply papers to these arguments, other than to state that,

> to the extent that plaintiffs raise a Rule 56(e) objection to the agreements being submitted through an affidavit of defendants, counsel, defendants will resubmit the agreements through additional affidavits of the parties or of Lufthansa should the Court so require.

The Court concludes, on the basis of these submissions and all of the circumstances of this case, that the contracts at issue are what they purport to be, that is, valid subcontracting agreements that governed the parties relationship during the time period relevant in this case. This conclusion, however, is conditional on the defendants complying with their offer above by resubmitting the agreements through additional affidavits of the parties or of Lufthansa so as to render those documents admissible in the context of this motion, and also to establish that the contracts were in effect at the appropriate time.

## CONCLUSION

For the reasons stated above, the defendants' motion for partial summary judgment limiting the plaintiffs' recovery to $75,000 in the aggregate under the Warsaw Convention is granted, upon the conditions set forth in this Opinion. Accordingly, it is hereby

ORDERED that, in accordance with the Pretrial Scheduling Order issued simultaneously with this Opinion, the defendants shall submit to the Court within ten days from the date of this Opinion the affidavits described herein; that the plaintiffs shall respond, if at all, to that submission within five days thereafter; and that the defendants shall submit any reply within three days of the opposition.

SO ORDERED.