**Danielle CROUCHER and Robert Croucher, Plaintiffs,**

v.

**WORLDWIDE FLIGHT SERVICES, INC. and John and Jane Does (1–10), Defendants.**

No. 99–CV–5651 (WGB).

United States District Court, D. New Jersey.

Aug. 16, 2000.

Barry A. Kozyra, Walder, Sondak & Brogan, P.A., Roseland, NJ, for plaintiff.

Stephen W. Bialkowski, McLellan & Bialkowski, L.L.C., Hackensack, NJ, Andrew Harakas, Biedermann Honeig Massamillo & Ruff, P.C., New York, NY, for defendant Worldwide Flight Services, Inc.

## OPINION

BASSLER, District Judge.

Defendant Worldwide Flight Services, Inc. ("Defendant"), moves for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiffs Danielle and Robert Croucher (jointly "Plaintiffs") cross move to remand. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Defendant's motion is **granted.** Plaintiffs' cross motion is **denied as moot.**

## I. BACKGROUND

### A. Facts

On January 31, 1999, Plaintiffs were passengers on board a Korean Air Lines ("KAL") flight from Newark, New Jersey to Seoul, Korea. After the plane departed from Newark, Plaintiffs' child became ill during the flight. Plaintiff Danielle Croucher ("Mrs. Croucher") removed the airsickness bag from the seat back pocket and, as she opened the bag, she came in contact with fluid that was in the bag, which Plaintiffs claim was left from a previous KAL flight.

The fluid in the airsickness bag was tested by an independent laboratory in Korea. Although the fluid in the airsickness bag was minimal, the sample tested negative for HIV and Hepatitis B Virus ("HBV"); however, the laboratory report stated: "[e]ven though the result of the HCV [Hepatitis C Virus] was positive[,][w]e could not be sure of the existence of Hepatitis C Virus because the specimen was uncertain."

For the purposes of this motion, there is no dispute regarding these facts. Moreover, the parties also do not dispute that all of the repeated medical/blood tests (at least four) performed upon Mrs. Croucher for HCV or any other infection have been, and continue to be, negative.

### B. Procedural History

On October 15, 1999, Plaintiffs filed suit against Defendant. Pursuant to a Standard Ground Handling Agreement with KAL, Defendant provided ground handling services to KAL at Newark International Airport. These ground handling services included cleaning the KAL aircraft cabin and clearing waste from seat back pockets.

Plaintiffs allege that as a result of Defendant's negligence, Mrs. Croucher came in contact with "bio-medical waste" causing Plaintiffs severe emotional distress and mental anxiety. Plaintiffs seek compensatory and punitive damages for: Count 1 (negligence)—claim by Danielle Croucher for "severe and permanent emotional distress" as a result of her concern and fear over being exposed to the potential for developing HCV; Count 2 (negligence)—claim by Robert Croucher for psychological distress and anxiety as a result of observing his wife coming in contact with bio-medical waste; Count 3 (loss of consortium)—claim by Robert Croucher for past and future loss of services and consortium; and Count 4 (gross negligence)—claim that Defendant's failure to ensure that KAL aircraft was free of hazardous conditions constituted wanton, reckless and gross negligence.

Defendant removed the suit to this Court on December 3, 1999, alleging subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Defendant contends that this action is governed by the Warsaw Convention ("Convention"), 49 U.S.C. § 40105 note.

Although the parties do not dispute that the Warsaw Convention applies to the transportation of Plaintiffs by KAL, the parties disagree on whether the Convention applies to Defendant as an agent or contractor of the carrier, KAL. Defendant argues that the liability limitations of the Warsaw Convention extend to the carrier's employees, agents, or independent contractors performing the services of the air carrier or in furtherance of the carriage enterprise. Therefore, Defendant seeks summary judgment contending that under the Convention, Plaintiffs cannot recover

damages for emotional distress or punitive damages.

In contrast, Plaintiffs maintain not only that their claims against Defendant are not governed by the conditions and limits of the Convention, but also that even if the Convention did apply, Defendant is liable because its conduct was reckless.

## II. DISCUSSION

### A. Standard for Motion for Summary Judgment

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Whether a fact is material is determined by the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue involving a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1219 n. 3 (3d Cir.1988), *cert. denied*, 490 U.S. 1098, 109 S.Ct. 2449, 104 L.Ed.2d 1004 (1989).

The moving party has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies this requirement, the burden shifts to the nonmoving party to present evidence that there is a genuine issue for trial. *Id.* at 324. Once the moving party has carried its burden of establishing the absence of genuine issues of material fact, the non-moving party "may not rest upon mere allegations or denials" of its pleading, Fed.R.Civ.P. 56(e), but must produce sufficient evidence to reasonably support a jury verdict in its favor, *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505, and not just "some metaphysical doubt as to material facts." *Mat-*

*sushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In determining whether any genuine issues of material fact exist, the Court must resolve "all inferences, doubts, and issues of credibility ... against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983) (citing *Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir.1972)); *accord Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1077 n. 1 (3d Cir.1996).

Since a motion for summary judgment is designed to go beyond the pleadings, factual specificity is required of a party who opposes such a motion. *Celotex*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Accordingly, in order to defeat a properly supported motion for summary judgment, a party may not merely restate the allegations of its pleadings. *Farmer v. Carlson*, 685 F.Supp. 1335, 1339 (M.D.Pa. 1988). Moreover, a party cannot rely upon self-serving conclusions, unsupported by specific facts in the record. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. A nonmoving party must point to concrete evidence in the record which supports each essential element of its case. *Id.* If the party fails to provide such evidence, then it is not entitled to a trial and the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(e).

In deciding a summary judgment motion, however, the Court's role is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. If the party opposing summary judgment has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the Court cannot credit the movant's version of events, even if the quantity of the movant's evidence far outweighs that of its opponent. *Big Apple BMW v. BMW of N. Am.*, 974 F.2d 1358, 1363 (3d Cir.1992).

## B. *Applicability of Warsaw Convention to Worldwide*

### 1. *Carrier*

Article 1(2) of the Warsaw Convention applies to "all international transportation of persons, baggage, or goods performed by aircraft for hire." Article 17 of the Convention provides:

> The *carrier* shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

(emphasis added). In any cases covered by Article 17, any action for damages is subject to the "conditions and limits" set forth in the Convention. Article 24(2). Moreover, "[a]ll state law claims that fall within the scope of the Convention are preempted." *Fishman v. Delta Air Lines, Inc.*, 132 F.3d 138, 141 (2d Cir.1998); *see also El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 160–61, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999).

The Convention, however, fails to define the term "carrier." Although the Third Circuit has not specifically addressed this issue, the Second Circuit has held that an airline carrier's employees are subject to the Warsaw Convention's terms and conditions. *See Reed v. Wiser*, 555 F.2d 1079 (2d Cir.) (holding that Convention limited liability of air carrier's employees against suit by plaintiffs for negligent failure to institute or maintain adequate security system), *cert. denied*, 434 U.S. 922, 98 S.Ct. 399, 54 L.Ed.2d 279 (1977); *but see Pierre v. Eastern Air Lines, Inc.*, 152 F.Supp. 486, 489 (D.N.J.1957) (holding that

Convention did not apply to employee of air carrier).[1]

In so holding, the court in *Reed*, after a thorough examination of the history and purpose of the Convention, concluded that the Convention's "basic principle" was to protect air carriers "from having to pay out more than a fixed and definite sum for passenger injuries sustained in international air disasters." *Reed*, 555 F.2d at 1089. Consequently,

> [t]o permit a suit for an unlimited amount of damages against a carrier's employees for personal injuries to a passenger would unquestionably undermine this purpose ..., since it would permit plaintiffs to recover from the carrier through its employees damages in excess of the Convention's limits.

*Ibid.* The Circuit recognized that because most carriers provide their employees with indemnity protection, it would not only be "inconceivable that airlines could long operate without reimbursing their employees for this cost of doing business," but also, the Convention's purpose of limiting the air carrier's exposure would be circumvented. *Id.* at 1090. Moreover, another "fundamental" purpose of the Convention was to "establish a uniform body of worldwide liability rules to govern international aviation, which would supersede with respect to international flights the scores of differing domestic laws, leaving the latter applicable only to the internal flights of each of the countries involved." *Ibid.* (footnotes omitted). In other words, courts would not have to "determine what domestic law applies and whether under that law recovery might be had for an amount greater than that recoverable against the airline." *Id.* at 1092.

Subsequent cases have extended the liability limitations of the Convention to air

---

**1.** The Court does not find *Pierre* persuasive because it was decided pre-*Reed* in 1957. Additionally, in that case, the court, without engaging in any analysis, stated that at the time of the accident, which was 1953, the Convention applied to the carrier only. Final-

ly, the outcome of *Pierre* is contrary to the majority of subsequent decisions, and more importantly, because of indemnity provisions, would defeat the purpose of the Convention to limit carrier liability, discussed *infra*.

carriers' agents, contractors, and even subcontractors who perform services that otherwise would have to be provided by the carriers and are in furtherance of the contract of carriage. *See Waxman v. C.I.S. Mexicana De Aviacion,* 13 F.Supp.2d 508, 515 (S.D.N.Y.1998) (holding that liability limits of Convention apply to cleaning services subcontractor that was sued by passenger on international flight who was injured when his leg was stuck by a hypodermic needle that was protruding from the fabric in the seat in front of him); *Kabbani v. Int'l Total Servs.,* 805 F.Supp. 1033, 1039 (D.D.C.1992) (finding that liability limits of Convention apply to independent contractor providing security services that was sued by passenger whose carry-on bag was stolen); *In Re Air Disaster at Lockerbie, Scotland on Dec. 21, 1988,* 776 F.Supp. 710 (E.D.N.Y.1991) (finding that Convention applies to agents of an air carrier that provided security services); *Sabena Belgian World Airlines v. United Airlines, Inc.,* 773 F.Supp. 1117, 1119 (N.D.Ill.1991) (noting that "it is clear" that Convention applies to claims against an agent or employee of the carrier).

In response, Plaintiffs suggest that "carrier" should not be too broadly defined to include all agents and contractors; rather, they maintain that the more appropriate avenue is to afford a non-employee agent the protections of the Convention only if that agent performs services that the carrier is obligated to provide *by law.* To support this position, Plaintiffs rely primarily on *In Re Air Disaster at Lockerbie, Scotland on Dec. 21, 1988,* 776 F.Supp. 710 (E.D.N.Y.1991). In that case, the plaintiffs argued that extending the liability limitations of the Convention to all non-employee agents would create results incompatible with the language of the Convention. The plaintiffs warned, for example, that if non-employee agents are deemed carriers, then passengers would be entitled to obtain damages against parties that may not have anything to do with the cause of the accident. To address that concern, the court noted that by holding

that the Convention governs the non-employee agent that performed security services for the carrier, it need not create a broad holding that all agents and contractors of an airline are protected by the Convention. *Id.* at 714. Rather, the court recognized that the liability limitations of the Convention have been limited to " 'those agents who perform services in furtherance of the contract of carriage' " and to "those agents performing services within the scope of the Convention that the airline is otherwise required by law to perform." *Ibid.* The court adopted the second construction. *Ibid.*

This Court is not persuaded by the decision in *Lockerbie.* First, the court in *Lockerbie* did not explain why it chose to adopt the second construction. Secondly, applying the liability limitations of the Convention only to those agents who perform services that the airline is required to by law to perform, "is not supported by the bulk of the relevant case law." *Rhodes v. American Airlines, Inc.,* 1996 WL 1088897, at *2 (E.D.N.Y. Dec.20, 1996). Moreover, such an application

> would create an absurd result: an airline would be permitted to avail itself of the liability provisions of the Warsaw Convention when it provided food to its passengers, but a duly authorized agent who performed the same service would be exposed to unknown and potentially immeasurable damages. This result, furthermore, would violate the essential purpose of the Convention: to provide uniform rules limiting aviation liability.

*Ibid.; see also Waxman,* 13 F.Supp.2d at 515 ("employees and agents who perform services fundamental to, or in furtherance of, the carriage enterprise, and which the carrier itself would be bound to perform— *even if not technically required by statute* —pursuant to its contract with its customers." (emphasis added)).

■ Therefore, the Court finds that the liability limitations of the Convention apply to Defendant for the performance of clean-

ing services that were in furtherance of the contract of carriage and otherwise would have been provided by KAL.

### 2. *Exception to Liability Limitation of Convention*

Plaintiffs conclude that based on the *Lockerbie* definition of "carrier," Defendant is not subject to the protections of the Convention. Specifically, Plaintiffs assert that the "*Lockerbie* definition of 'carrier' is analogous to Art. 25 [2] of the Warsaw Convention" in that "[i]t establishes a public policy of holding non-employee agents without regard to limiting liability when the non-employee agent negligently performs a service which neither they, nor the air carrier, are under a legal obligation to provide." Pl.'s Br. in Opp'n to Def.'s Mot. for Summary Judgment, at 7 (footnote added).

Plaintiffs' position is entirely without merit either as a matter of law or fact. As noted by Defendant, the issue of "wilful misconduct" is irrelevant to the determination of what constitutes a "carrier" that is subject to Article 17 of the Convention. Further, as a matter of law, the "wilful misconduct" exception to the liability limitations of the Convention set forth in Article 25 is not analogous to any negligence standard.

Additionally, Plaintiffs have provided no evidence to support any suggestion that Defendant's actions constituted "wilful misconduct." Therefore, Article 25 does not exclude Defendant from the protection of the liability limitations of the Convention.

### C. *Liability Pursuant to the Warsaw Convention*

Liability under article 17 of the Convention requires only that (1) there has been an "accident," which has been defined as

"an unusual or unexpected event or happening external to the passenger," *Air France v. Saks*, 470 U.S. 392, 405, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985); (2) the passenger suffered death or bodily injury as a result of the accident, *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 535–36, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991), *Terrafranca v. Virgin Atlantic Airways, Ltd.*, 151 F.3d 108, 110 (3d Cir.1998); and (3) the "accident" took place "on board the aircraft or in the course of any of the operations of embarking or disembarking." *Floyd*, 499 U.S. at 535–36, 111 S.Ct. 1489. Because the first factor is not in dispute, the Court need only address the second and third elements.

### 1. *Location of Accident*

Plaintiffs claim that even if Defendant is a "carrier," the Convention is inapplicable because Defendant's negligence did not occur during the contract of carriage, but rather, at some unknown time before Plaintiffs boarded the airplane.

█ The Court must reject Plaintiffs' theory. Here, the accident occurred "on board the aircraft" and is therefore clearly within the ambit of Article 17. *See Waxman*, 13 F.Supp.2d at 515 (applying Convention where negligent cleaning of aircraft resulted in passenger injury during flight).

### 2. *Bodily Injury*

█ Defendant concedes that the first and third factors have been met; however, with respect to the third requirement that "bodily injury" result from the accident, Defendant correctly claims that purely mental anguish does not constitute a "bodily injury" for which damages are recoverable under the Convention. *See Floyd*, 499 U.S. 530, 111 S.Ct. 1489 (concluding that

---

**2.** Article 25 of the Convention provides:
The carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability, if the damage is caused by his wilful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be equivalent to wilful misconduct.

Article 17 requirement that accident result in "bodily injury" does not encompass claims for damages solely for mental distress); *see also Terrafranca,* 151 F.3d at 110–12.

Plaintiffs do not dispute that they have not suffered any "bodily injury" and that they seek only to recover damages for emotional distress arising out of the concern and fear over being exposed to the potential for developing the Hepatitis C Virus or some other infectious disease. Instead, Plaintiffs point out that any cases that have considered to what extent the Convention governs non-employee agents have only held that Article 22, which limits the damages awarded to plaintiffs, is applicable to non-employee agents. Plaintiffs theorize that therefore, absent a determination that the Convention applies in its entirety to non-employees, the Convention should not preempt their state law claims. Because Plaintiffs' position is not supported by any law, the Court declines to adopt it.

### 3. *Punitive Damages*

Plaintiffs do not argue that punitive damages are recoverable in an action governed by the Convention. Rather, Plaintiffs' claim that if Defendant is not a "carrier," then they are entitled to punitive damages under state law. All of Plaintiffs' state law claims, however, are preempted because, as discussed above, the Convention is applicable to this case. Accordingly, Plaintiffs' claim for punitive damages must be dismissed.

### III. *CONCLUSION*

For the reasons noted above, Defendant's motion for summary judgment is **granted.** Plaintiffs' cross motion for remand is **denied as moot.**

### ORDER

This matter having come before the Court on the motion of Defendant Worldwide Flight Services, Inc. for summary judgment pursuant to Rule 56, Fed.R.Civ.P.; and the cross motion of Plaintiffs to remand;

The Court having considered the submissions of the parties;

For the reasons set forth in the Court's opinion filed this day; and

For good cause shown;

It is this 16th day of August, 2000, hereby ORDERED that the Defendant's motion for summary judgment is **granted;** and

IT IS FURTHER ORDERED that Plaintiffs' cross motion to remand is **denied as moot;** and

IT IS FURTHER ORDERED that the Clerk of the Court shall **close** this case.