778 A.2d 607

ATLANTIC MERCHANDISING GROUP, LTD., PLAINTIFF, v. DISTRIBUTION BY AIR, INC., DEFENDANT/THIRD–PARTY PLAINTIFF, v. DELTA AIRLINES, THIRD–PARTY DEFENDANT.

Superior Court of New Jersey
Law Division Essex County

Decided May 4, 2001.

*Francis M. Taylor*, for Plaintiff (*O'Brien and Taylor*).

*Peter Kurshan*, for Defendant/Third–Party Plaintiff (*Chase, Kurshan, Herzfeld & Rubin, LLC*).

*William D. Wilson* and *Francis Montbach*, for Third–Party Defendant (*Mound, Cotton & Wollan*).

LINARES, J.S.C.

The Court has reviewed the materials counsel has submitted and has also considered counsel's oral arguments with regard to the motion for summary judgment filed by defendant/third-party plaintiff DBA Distribution Services, Inc. Defendant's motion was filed pursuant to *R.* 4:46 and the Warsaw Convention, 49 Stat. 3000, T.S. 876 (1934), 49 U.S.C. § 40105.

Oral argument was heard on March 16, 2001, and this Court reserved its decision at that time pending additional submissions by counsel, on the specific issue of whether the Warsaw Convention is applicable to defendant DBA Distribution Services, Inc. (hereinafter referred to as "DBA"). Counsel for DBA forwarded to this Court an additional memorandum of law dated March 22, 2001 and counsel for plaintiff Atlantic Merchandising (hereinafter "Atlantic") forwarded its additional memorandum of law on March 23, 2001.

As detailed below, this Court has reached its decision on defendant's motion and the Court's findings were placed on the record on May 4, 2001. The background of this matter has been set forth at length in the papers, oral arguments and by the Court on the record. However, by way of brief background, this matter pertains to a lawsuit filed by plaintiff Atlantic against DBA and others arising out of an attempted shipment of a display prototype manufactured by the plaintiff that was to be shipped to Cannes,

France.  According to the submissions of counsel, Atlantic contracted with defendant DBA on or about October 6, 1999 to transport a display prototype to a customer of the plaintiff in Cannes, France.  Apparently, the prototype was to be delivered to the customer by October 12, 1999.  It appears to be undisputed that plaintiff complied with all of the requirements and necessary paperwork required by the defendants and turned over the prototype to defendant DBA by October 8, 1999.  The defendant does not dispute that this was sufficient time to have had the prototype delivered.  Unfortunately, the prototype was never delivered to France, but was taken by the defendant to Kennedy Airport where it remained at a Delta Airlines warehouse until October 19, 1999, when it was finally located.  Plaintiff alleges that as a result it lost a prospective contract and a long time customer, and therefore, filed suit seeking damages.

Plaintiff Atlantic is in the business of providing marketing services to various clients.  As part of said services, plaintiff designs and provides point of purchase displays primarily to industries that cannot advertise on television and radio, such as sellers of wine, spirits and tobacco companies.  In this case, plaintiff had been requested by Finlandia Vodka to design a display prototype to be used in a new marketing campaign and requested that the display be available for a symposium taking place in Cannes, France in October 1999.  Plaintiff thereafter developed the prototype display at a cost of eighteen thousand dollars ($18,000) and contracted with defendant DBA for shipment of same to Cannes, France.

DBA is in the business of handling shipments by ground and air transportation.  DBA does not operate any aircraft.  However, if transportation by air is required, it makes the necessary arrangements for such transportation to be performed by a licensed air carrier.  In this case, DBA contracted with its international agent, Fracht FWO Inc. (hereinafter "Fracht"), to arrange the pick up and delivery of the prototype to the airport to be flown to France by Delta Airlines.  The airway bill was prepared by Fracht,

allegedly based on information received from the plaintiff. In said air bill, no value for the prototype was declared. Subsequently, due to a chain of errors, confusion and/or negligence (the actual reason is not germaine to this motion), the shipment never reached France, but remained "lost" at a warehouse in Kennedy Airport and was not again located until October 19, 1999, to the plaintiff's alleged detriment and damage since the actual deadline for delivery had passed.

Plaintiff sues DBA seeking, *inter alia*, costs and expenses of shipment, development of the display, loss of business and profits. Defendant DBA moves for summary judgment as to all allegations of the complaint and seeks dismissal of same with prejudice or, in the alternative, seeks to limit the defendant's exposure to $9.07 per pound or $920.00 pursuant to the limitations of the Warsaw Convention.

The issues to be decided by this court are as follows:

1. Is defendant DBA entitled to the protections and the limitation of liability of the Warsaw international treaty governing air freight shipments?

2. If defendant is entitled to the protections and limits of liability of the treaty, should the plaintiff's claim be dismissed pursuant to the treaty due to his failure to file a "written claim" with the defendant within 14 days as required under Article 26(2) and (3) of said treaty; and

3. If plaintiff gave appropriate "written notice of claim," are the plaintiff's damages limited by the amounts set forth in Article 22(2) of said treaty due to the fact that plaintiff made no special declaration of value of delivery.

■ The Warsaw Convention (hereinafter the Convention) applies to international shipments, like the one present in this case, which originated in the United States and was destined for France. Both countries were signatories to the Convention. Therefore, the Convention clearly applies to the shipment of the display to France when the shipment is made by an aircraft for

hire. *See Lourenco v. Trans World Airlines, Inc.,* 244 *N.J.Super.* 48, 581 *A.*2d 532 (Law Div.1990). The Convention also establishes the exclusive remedy for damages arising from claims that fall within its scope. *See Carroll v. United Airlines, Inc.* 325 *N.J.Super.* 353, 359, 739 *A.*2d 442 (App.Div.1999). The first question in this case, however, is whether the protections of the Convention apply to DBA, who is not an air carrier, does not operate any aircraft directly and only makes arrangements for such transportation to be done by an independent licensed air carrier, in this case, Delta Airlines.

There appears to be no reported New Jersey case directly on point specifically defining what an "air carrier" is for the purpose of the protections offered by the Convention as to liability and damages. DBA acknowledges that the nature of its involvement was to arrange for the export documentation in conjunction with the shipper, Atlantic, and then to contract with its agent, Fracht, to arrange the pick up and delivery of the shipment to Delta Airlines to be transported to France. DBA quoted the fee to the plaintiff, forwarded the necessary documentation to the plaintiff, which needed to be completed for a shipment to Cannes, France, faxed the export declaration to the plaintiff and provided instructions on how to complete the documentation. The airway bill was prepared by DBA's agent, Fracht. It is unclear, but it appears that the actual ground transportation of the shipment to the Delta scheduled flight was to be handled by Fracht.

In order to determine whether under these facts DBA is entitled to the protections of the Warsaw Convention depends on whether DBA is to be viewed as an indirect "air carrier" within the meaning of the Warsaw Convention.

As previously stated, New Jersey appears to have no reported decisions dispositive of this issue. Federal courts which have decided similar cases have found the protection of the Convention to extend to subcontractors providing services for airlines. Federal courts have held, for example, that the Convention applies to a subcontractor providing cleaning services when it was sued by a

passenger injured by a hypodermic needle protruding from a seat. *See Waxman v. C.I.S. Mexicana De Aviacion,* 13 *F.Supp.*2d 508 (S.D.N.Y.1998); *see also Kabbani v. Int'l Total Servs.,* 805 *F.Supp.* 1033 (D.D.C.1992). The court in *Kabbani* held that the Convention's protections extended to an independent contractor providing security services when a claim was made by a passenger for stolen baggage. *Ibid. Waxman* and *Kabbani* were both cited by the defendant in the case *sub judice* for the proposition that DBA, although not an airline, should nevertheless be entitled to the status of a "carrier" under the Warsaw Convention since its activities were in furtherance of the contract of carriage. These cases, although persuasive, are somewhat different and distinguishable from the case at bar. They pertain to entities who are clearly direct agents of the air carriers, providing services which were directly for the benefit of the air carriers and/or its passengers and thus clearly acting in furtherance of the contract of carriage. Another case, *Croucher v. Worldwide Flight Servs., Inc.,* 111 *F.Supp.*2d 501 (D.N.J.2000), examined the issue of whether the Convention limitations should apply to a contractor who provided ground handling services including the cleaning of the aircraft for an airline at the airport. There, plaintiffs passengers in an airplane claimed psychological damages as a result of having come in contact with fluid left in an airsick bag apparently from a previous flight. *See id.* at 502. Acknowledging that the Convention fails to define the term "carrier" and that the Third Circuit has not specifically addressed that issue, the court pointed out that the Second Circuit in *Reed v. Wiser,* 555 *F.*2d 1079 (2d Cir.), *cert. denied,* 434 *U.S.* 922, 98 *S.Ct.* 399, 54 *L.Ed.*2d 279 (1977) held that the Convention limited the liability of airline employees. *See Croucher, supra,* 111 *F.Supp.*2d at 504. Following the reasoning of *Reed, supra,* and other cases that extended the liability limitations of the Convention to "carriers' agents, contractors, and even subcontractors who perform services that otherwise would have to be provided by the carriers and are in furtherance of the contract of carriage," the court in *Croucher* held that the liability limitations of the Convention applied to the defendant cleaning

service for cleaning services performed by the defendant that were "in furtherance of the contract of carriage." *Id.* at 505–06. In reaching that conclusion, Judge Bassler departed from the more restrictive approach taken by the court in the Eastern District of New York case of *In re Air Disaster at Lockerbie, Scotland on December 21, 1988,* 776 *F.Supp.* 710 (E.D.N.Y.1991). *Id.* at 505. There, the court had been faced with an argument by the plaintiffs that extending the liability limitations of the Convention to non-employee agents of the air carrier would create results incompatible with the language of the Convention. *Ibid.* In *Air Disaster,* the court held that the Convention does govern non-employee agents who performed security services for the carrier, but limited that holding to "those [non-employee] agents performing services within the scope of the Convention *that the airline is otherwise required by law to perform."* *Air Disaster,* 776 *F.Supp.* at 714 (emphasis added). Judge Bassler in *Croucher* chose the more broad approach extending the liability limitations of the Convention to those [non-employees] agents who performed services "in furtherance of the contract of carriage." *See Croucher, supra,* 111 *F.Supp.*2d at 505–506. This was basically the same conclusion reached by the court in *Waxman, supra.* In this case, DBA is not quite as closely related to the carrier, its passengers or cargo, as the defendants in *Waxman, Croucher, Reed* or *Kabbani, supra;* in fact, it is twice removed. Although DBA does arrange for the export documents and makes other arrangements on behalf of the plaintiff shipper (Atlantic), it is not DBA who issues the international air bill or arranges for the actual transportation of the prototype, but instead those direct services in furtherance of carriage are done by its agent Fracht, albeit at the request and instructions of DBA.

This Court agrees with the reasoning of Judge Bassler in *Croucher, supra,* that the better and the more sensible approach is to extend the protection of the Convention to those agents who perform services "in furtherance of the contract of carriage." This approach was recognized by the Appellate Division in *Carroll*

*v. United Airlines, Inc., supra,* 325 *N.J.Super.* at 362, 739 *A.*2d 442 where Judge Conley states "[t]he Warsaw Convention provisions [ ] have been construed to apply to various third-parties when they are acting 'in furtherance of carriage.' " Thus, if DBA is construed as an agent performing services in furtherance of carriage, then it is, in essence, an "indirect carrier" and as such should enjoy the limitations of liability and coverage afforded by the Convention. It is clear that the Convention was meant to establish "a uniform body of worldwide liability rules to govern international aviation, which would supersede with respect to international flights the scores of differing domestic laws." *Reed, supra,* 555 *F.*2d at 1090. The key question, therefore, is whether using the "in furtherance of carriage" test, DBA is to be considered a carrier. In determining this, a broad interpretation of the term "carrier" should be used so as ensure that the intended purpose of the Convention is not defeated and ensure that international aviation rules remain uniform, and the liability limitations intact regardless of whom a plaintiff may sue. *See Johnson v. Allied Eastern States Maintenance Corp.* 488 *A.*2d 1341, 1343 (D.C.1985).

In deciding whether the definition of an "air carrier" acting in the furtherance of the contract of carriage applies to the case *sub judice,* guidance can be found from the opinion in *Royal Ins. v. Amerford Air Cargo,* 654 *F.Supp.* 679 (S.D.N.Y.1987). In that case, the central issue was "whether [defendant] Amerford [was] an 'air carrier' within the meaning of the Warsaw Convention." *Royal,* 654 *F.Supp.* at 681. Amerford was an air freight forwarder. *Id.* at 680. Its business consisted of picking up goods from its customers, arranging air transportation on a direct carrier, consolidating the goods in preparation for transport and delivering them to the air carrier. *Ibid.* For all said services, Amerford would receive a single fee which included the cost of the flight. *Ibid.* In *Royal,* the Court held that Amerford was an "indirect carrier" and thus a carrier within the meaning of the Convention. *Id.* at 683. Here, although defendant DBA did not do the actual pick up of the

goods, nor did it consolidate the goods in preparation for transport, deliver the goods in preparation for transport or deliver the goods to the air carrier (those items were done by its agent Fracht), DBA did contract with plaintiff to transport the goods to Cannes, France and did make arrangements for the necessary paperwork and other arrangements through Fracht to get the international transportation of the plaintiff's prototype accomplished. In this sense, it was a "freight forwarder" just like defendant Amerford in *Royal, supra.* Its very business is that of accomplishing that which the plaintiff contracted it to do, i.e., to internationally ship its prototype. Like Amerford, it held itself out to the public as an air freight forwarder or indirect air carrier performing transportation services to the public under which it utilizes the services of a direct carrier for the actual transportation by air. Therefore, although DBA did not carry or deliver the merchandise itself, it assumed, in essence, the same responsibility as a carrier. It was to manage, coordinate and oversee the contract of carriage from its inception to delivery in Cannes, France. Thus, under the circumstances of this case, DBA is an indirect air carrier and should be afforded the protections of the Convention. It would be anomalous to, on the one hand acknowledge that DBA, by virtue of its relationship with the plaintiff, assumes the responsibility of a carrier to ship plaintiff's prototype by air, on a direct carrier's plane to France and, on the other hand, hold that DBA would not benefit from the same protection that the Convention affords the direct carrier. Simply put, one who is in the business of shipping goods overseas and is involved in the preparation of the necessary export documentation and arranges for the transportation and delivery of the goods to the direct air carrier is in essence a "carrier" within the meaning of the Convention regardless of whether the actual ground transportation is done, as was here, by a separate entity (Fracht) and where the goods are to be delivered via an independent direct carrier (Delta).

Thus, having decided that the protections of the Convention apply to DBA, the next issue to be decided by the Court is

whether the plaintiff's claim is barred by virtue of Article 26(3) of the Convention.

Article 26 of the Convention states, in relevant part, as follows:

(2) In case of damage, the person entitled to delivery must complain to the carrier forthwith after discovery of the damage, and at the latest, within 3 days from the date of receipt in the case of baggage and 7 days from the date of receipt in the case of goods. *In case of delay the complaint must be made at the latest within 14 days from the date on which the baggage or goods have been placed at his disposal.*

(3) Every complaint must be made in writing upon the document of transportation or by separate notice in writing dispatched within the times aforesaid.

(4) *Failing complaint within the times aforesaid, no action shall lie against the carrier, save in the case of fraud on his part.*

(emphasis added.) Defendant contends that plaintiff failed to give the required written notice under Article 26 and that therefore under Article 26(4) no action can lie against it.

Plaintiff claims that the defendant's contention is not valid because the plaintiff had complained as to non-delivery by facsimile transmission on October 19, 1999 and because defendant had actual notice based on a October 19, 1999 facsimile sent by defendant well within the fourteen days required under Article 26(2) where defendant acknowledged that it knew the shipment was lost. Furthermore, the plaintiff claims Article 26 is inapplicable because it relates (according to plaintiff) only to claims "for damages" and the case at bar deals with a situation where the goods were actually never delivered and not found until it was too late for delivery to its customer. Finally, the plaintiff alleges that the notice requirements are not applicable because defendant allegedly fraudulently misrepresented the status of the shipment. This, the plaintiff claims, makes the notice provision inapplicable by virtue of section 26(4) which states that "[f]ailing complaint within the times aforesaid, no action shall lie against the carrier, *save in the case of fraud* on his part." (Emphasis added).

The Court finds no merit in plaintiff's contention that Article 26 is not applicable because the prototype herein was not "damaged," but instead misplaced. Article 26 clearly applies to cases of "delay in the delivery of goods" which is akin to the situation at hand where the goods were misplaced and not found in time to meet the

requested delivery date to the customer. In essence, there was a delay in the delivery of the goods. Thus, the written notice requirement of Article 26 applies absent fraud on the part of the carrier DBA.

The type of written notice which is required under the Convention is one that indicates an express and definite statement by the plaintiff that he intends to hold the carrier liable. The fact that DBA herein acknowledged via fax dated October 19, 1997 that "[a]t this moment the crate is lost" and actual notice of the misplacement of the prototype must thereby be imputed to DBA is of no moment *vis a vis* the written notice requirement. Actual notice does not place the carrier on specific notice that it (as opposed to Delta or Fracht or some other entity) will be the subject of the claim by Atlantic. *See M.E. Denby v. Seaboard World Airlines Inc.,* 575 *F.Supp.* 1134, 1144 (E.D.N.Y.1983), *rev'd* 737 *F.2d,* 172 (2d Cir.1984) (citing *Lady Marlene Brassiere Corp. v. Irish Int'l Airlines,* 13 *Avi.* 17,428 (N.Y.Civ.Ct.1971)) ("[f]ormal written notice provides the carrier not merely with an indication that a shipment has been damaged, but with an express and definite statement of the shipper's intention to hold the carrier liable. Actual notice gives the carrier nothing to indicate that he, rather than another party, is the object of the shipper's claim").

Likewise, Plaintiff's fax to DBA dated the same day (October 19, 1999) is not sufficient to fulfill the type of notice requirement enumerated above. It merely requests information as to how to proceed with a claim if the display ends up lost. Clearly, this is not the type of specific notice envisioned in the Convention's written notice requirement. Therefore, unless there is evidence of fraud on the part of the carrier, the plaintiff's claim must fail for lack of proper written notice.

The allegations of fraud by the plaintiff is based on the fact that defendant apparently misrepresented the status of the shipment when it advised the plaintiff via fax dated October 13, 1999 that the cargo had flown via Delta to Nice, France and arrived on the 10th. Is this sufficient to sustain a claim of fraud? In order to

determine that issue, this Court looks at the totality of the circumstances regarding the subject fax. Apparently, the display of the plaintiff was part of a shipment of twenty-eight boxes. The shipment of the boxes was apparently delivered to Delta Airlines on the evening of October 8, 1999. The next day, Fracht apparently inquired whether the shipment of the boxes had left on the scheduled Delta Flight of October 9, 1999 and it was advised that it had. On October 12, 1999, Fracht's agent in Nice (Set Avion) advised Fracht that instead of twenty-eight boxes, only twenty-seven pieces had arrived and that one piece was missing. Upon checking further with Delta, Delta erroneously advised that the cargo had flown on the 9th and had arrived on the 10th. Based on this information, the plaintiff was advised of the information obtained from Delta by DBA via fax dated October 13, 1999. However, the display continued to be missing on October 14 and Fracht advised its agent in France that Delta had confirmed the cargo was not in New York. Eventually, on October 19, one of the Fracht employees finally located the display at a Delta warehouse in New York. At that time, the plaintiff was contacted for instructions and due to the delay, plaintiff requested that the display be returned to them as it was by then too late for delivery to its customer in France.

■ The concept of fraud is a legal one and it consists of "a material representation of a presently existing or past fact, made *with knowledge* of its falsity and with intention that the other party rely" on it which in turn results in reliance by that party to his detriment. *See United Jersey Bank v. Kensey*, 306 *N.J.Super.* 540, 550, 704 *A.*2d 38 (App.Div.1997) (citing *Jewish Ctr. of Sussex County v. Whale*, 86 *N.J.* 619, 624, 432 *A.*2d 521 (1981)) (emphasis added).

Here, although the erroneous representation that the display had flown was clearly material, it was clearly not made with knowledge of its falsity or under circumstances which could lead a reasonable fact finder to find that it was fraudulent within the meaning of fraud as set forth above. Therefore, the written notice

requirement of Article 26(2) applies. Plaintiff, having failed to meet said requirement, is barred from pursuing his claim pursuant to Article 26(4).

In conclusion, for the foregoing reasons, this Court finds that the Convention protections and limitations apply to the case at bar and that the claim against DBA is barred due to the plaintiff's failure to give proper written notice of the claim as required under Article 26.